Paul P. Burghardt (NC Bar No. 55661)
Attorney for Plaintiff
4732 NC Hwy 54 East
Graham, NC 27253
Email: paul@bucknercompanies.com
Telephone: (801) 413-9943

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **BUCKNER HEAVYLIFT CRANES, LLC,** a North Carolina limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**S'N'S ERECTORS, INC.,** a Texas corporation,<br><br>Defendant. | Case No. 26-868<br><br>**COMPLAINT**<br><br>*(Bench Trial Demanded Per Contract)* |

Plaintiff Buckner Heavylift Cranes, LLC ("Buckner"), by and through its undersigned counsel, files this Complaint against Defendant S'n'S Erectors, Inc. ("SNS"), and alleges as follows:

## PARTIES

1. Plaintiff Buckner is a limited liability company organized under the laws of the State of North Carolina with its principal place of business at 4732 NC Hwy 54 East, Graham, North Carolina 27253. Buckner is in the business of leasing heavy lift cranes and providing related services.

2. Defendant SNS is a corporation organized under the laws of the State of Texas with its principal place of business in Burleson, Texas, and project operations in Taylor, Texas. SNS is in the business of erection and steel-construction services.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Buckner is a limited liability company. For purposes of diversity jurisdiction under 28 U.S.C. § 1332, a limited liability company is a citizen of every State of which its members are citizens. The sole member of Buckner is CPB, Inc., a North Carolina corporation with its principal place of business in North Carolina. Buckner is therefore a citizen of North Carolina, and no member of Buckner is a citizen of Texas. SNS is a corporation organized under the laws of the State of Texas with its principal place of business in Texas, and is therefore a citizen of Texas. Complete diversity of citizenship exists between the parties. The amount in controversy exceeds $75,000, exclusive of interest and costs, and is at least $733,939.52, plus accruing late charges, costs, and attorney fees.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Buckner's claims occurred in this District. Buckner's principal place of business is in Graham, Alamance County, North

Carolina, which lies within this District; the Rental Agreements were made with Buckner in this District; Buckner issued Invoice No. SNS012726 from this District; and payment on that invoice was due to Buckner in this District. Venue is also proper under 28 U.S.C. §§ 1391(b)(1), 1391(c)(2), and 1391(d) because SNS is subject to this Court's personal jurisdiction with respect to this action and its North Carolina contacts are most significant in this District. In addition, Section 36 of the Equipment Rental Agreements executed between the parties on September 21, 2022 (the "Rental Agreements") provides that "exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the United States District Court of the State of North Carolina," and SNS has thereby consented to the personal jurisdiction of this Court and waived any objection to venue in a United States District Court in North Carolina.

6. The Rental Agreements are governed by North Carolina law. Section 36 provides that the agreements "shall be construed under and enforced in accordance with the laws of the State of North Carolina."

7. The parties have waived trial by jury. Section 36 provides: "The parties hereby waive trial by jury with respect to any action, claim, suit, or proceeding connected herewith."

## FACTUAL ALLEGATIONS

**A. The Rental Agreements.**

8. On September 21, 2022, Buckner and SNS executed four Rental Agreements, true and correct copies of which are attached as Exhibit A, for four Liebherr LTR1220 cranes (the "Cranes") to be deployed at the Samsung project located at 2351 Co Rd 404, Taylor, Texas 76574 (the "Project").

9. Section 19 of each Rental Agreement allocates tax liability between the parties as follows:

> Buckner shall be responsible for income and property taxes associated with the Equipment provided under this Agreement. Customer shall be responsible for, and pay and discharge when due, all other license fees, assessments, and all taxes including all sales, use, rental, excise goods and services, and other taxes or duties now or hereafter imposed by any local, state or federal government or taxing authority upon the Equipment whether the same are payable by or billed or assessed to Buckner or Customer, together with any penalties or interest in connection therewith.

10. Section 29.1 of each Rental Agreement provides for service and late charges of 1.5% per month, being 18% per annum, on accounts over 30 days until paid in full, with sums computed and compounded monthly.

11. Section 33 of each Rental Agreement provides that the prevailing party in litigation arising out of the agreements is entitled to recover reasonable attorney fees and costs.

12. Section 36 of each Rental Agreement provides for North Carolina governing law, exclusive federal forum in the State of North Carolina, jury trial waiver, and prevailing party attorney fees.

## B. Performance of the Rental Agreements.

13. Pursuant to the Rental Agreements, Buckner provided four Liebherr LTR1220 cranes to SNS at the Project. SNS used the Cranes from late 2022 through 2024.

14. Buckner billed SNS on a lump-sum basis for operated crane services. SNS paid the rental invoices.

## C. The Texas Comptroller Audit.

15. The Texas Comptroller of Public Accounts (the "Comptroller") conducted a sales, use, and Texas Emissions Reduction Plan ("TERP") tax audit covering Buckner's Texas operations, including its operated rentals to SNS at the Project.

16. The Comptroller assessed sales and use tax ("SUT") and TERP tax against Buckner in connection with the SNS rentals. The Comptroller's working papers allocated 85% of each lump-sum rental invoice to the equipment portion (subject to taxation) and 15% to operator labor.

17. The Comptroller's assessment attributable to the SNS rentals at the Project consists of the following amounts:

a. SUT Liability: $533,777.41

b. SUT Interest: $122,626.81

c. TERP Liability: $77,535.30

d. TERP Interest: To be assessed by the Texas Regional Processing Center

## D. Buckner's Invoice and SNS's Failure to Pay.

18. On January 27, 2026, Buckner issued Invoice No. SNS012726 to SNS in the principal amount of $733,939.52, comprising the SUT Liability, SUT Interest, and TERP Liability identified above.

19. Buckner Invoice No. SNS012726 was issued on Net 30 day terms and was due and payable on February 26, 2026.

20. SNS has not paid Buckner Invoice No. SNS012726 in whole or in part.

21. Late charges of 1.5% per month, compounded monthly, have accrued on the unpaid principal since February 26, 2026, pursuant to Section 29.1 of the Rental Agreements, and continue to accrue.

## COUNT I

## BREACH OF CONTRACT

22. Buckner re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

23. The Rental Agreements are valid and binding contracts between Buckner and SNS.

24. Buckner has performed all of its obligations under the Rental Agreements.

25. Section 19 of the Rental Agreements obligates SNS to pay all sales, use, excise, and other taxes (and any penalties or interest in connection therewith) imposed by any state taxing authority upon the Equipment, whether assessed against Buckner or SNS.

26. The Comptroller's audit assessment falls within Section 19. SNS's payment obligation is unconditional and is not contingent on the merits of the underlying tax determination, on whether Buckner was the entity assessed by the Comptroller, or on whether SNS challenges the assessment with the Comptroller.

27. SNS has failed and refused to pay the amount invoiced under Buckner Invoice No. SNS012726.

28. SNS's failure to pay constitutes a material breach of the Rental Agreements.

29. As a direct and proximate result of SNS's breach, Buckner has been damaged in an amount of not less than $733,939.52, plus accruing late charges of 1.5% per month compounded monthly under Section 29.1, plus reasonable attorney fees and costs under Sections 33 and 36, plus any additional amounts assessed by the Comptroller for TERP Interest attributable to the SNS rentals.

## <u>COUNT II</u>

## UNJUST ENRICHMENT (Pleaded in the Alternative)

30. Buckner re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

31. Buckner conferred a benefit on SNS by providing the Cranes and operators for the Project and by absorbing the upfront cost of the Comptroller's tax assessment attributable to the SNS rentals.

32. SNS knew of and accepted that benefit.

33. Under the circumstances, it would be inequitable for SNS to retain the benefit without paying its fair share of the tax assessment, which the parties agreed in Section 19 of the Rental Agreements would be borne by SNS.

34. SNS has been unjustly enriched at Buckner's expense in the amount of $733,939.52, plus interest and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Buckner respectfully requests that this Court enter judgment in its favor and against SNS, and grant the following relief:

a. Compensatory damages in the amount of $733,939.52, plus all additional amounts assessed by the Texas Comptroller for TERP Interest attributable to the SNS rentals when issued;

b. Contractual service and late charges at the rate of 1.5% per month, compounded monthly, accruing from February 26, 2026, pursuant to Section 29.1 of the Rental Agreements, together with prejudgment interest as allowed by North Carolina law;

c. Post judgment interest at the rate set forth in the Rental Agreements;

d. Reasonable attorney fees and costs pursuant to Sections 33 and 36 of the Rental Agreements;

e. Costs of suit; and

f. Such other and further relief as the Court deems just and proper.

DATED this 24th day of August 2026.

/s/ Paul P. Burghardt
Paul P. Burghardt (NC Bar No. 55661)
*Attorney for Plaintiff Buckner Heavylift Cranes, LLC*

EXHIBIT A

BUCKNER HEAVYLIFT CRANES

Job Number:___________

**EQUIPMENT RENTAL AGREEMENT - OPERATED**

THIS AGREEMENT made this day 17th, of August 2022.

BETWEEN BUCKNER:

Buckner Heavylift Cranes, LLC ("**Buckner**")
4732 HWY 54 S
Graham, NC 27253
Phone: 336-376-8888
Contact: Jeff Holmes
Email: jeffh@bucknercompanies.com

AND CUSTOMER

S'n'S Erectors Inc. ("**Customer**")
Burleson, Texas 76017
2351 Co Rd 404, Taylor, TX, 76574
Authorized Contact: Jason Stout
Email: jason@snserectors.com

1. Equipment & Rate: Buckner rents to Customer the equipment identified below, including any additional equipment and accessories identified herein (collectively the "**Equipment**""), at the rates shown below and, on the terms, and conditions contained in this Agreement. In addition, Buckner shall provide Customer with one or more operators ("**Operator**) for the Equipment. Operator shall at all times operate and maintain the Equipment under the exclusive direction of Customer. Customer agrees not to transfer the Equipment or allow anyone else to direct its operation.

| **Unit #** | **Configuration** | **Make** | **Model** | **Serial No.** | **Value** |
|---|---|---|---|---|---|
| HC2236 | Hydro | Liebherr | LTR1220 | 47654 | $1,900,000.00 |

| **Minimum Term** | **Rental Start** | **Weekly Hours** | **Payment Terms** | **Billing Cycle (Days)** |
|---|---|---|---|---|
| 3 mo. | December 5, 2022 | Minimum 50 | Net 30 | 28 |

Dec 5th - Jan 5th

DS BCM

| | |
|---|---|
| Hourly Rate | $ 305.00 |
| Second Shift | N/A |

| **Matting** | **Description** | **Rate/Terms** |
|---|---|---|
| S'n'S Responsible | N/A | N/A |

| **Transportation** | |
|---|---|
| | Amount/Terms |
| Mobilization | $ 22,500.00 |
| Demobilization | $ 22,500.00 |
| Delivery Address | 2351 Co Rd 404, Taylor, TX, 76574 |

| **Equipment Technicians** | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | N/A | N/A |
| Daily Rate | A/D Tech included into transportation cost. Any technician required outside of initial assembly or final disassembly will be invoiced at $1,950.00/day up to 10 hours | |
| Lump Sum | N/A | |
| Per Diem | $125.00 | |

| **Operators** | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | Included in hourly rate above | Included in hourly rate above |
| Per Diem | $ 125.00 | |
| Weekly minimum hours | 50 | |

| Special Considerations |
|---|
| |

All prices in USD unless otherwise specified. Per diem is charged seven days per week unless otherwise specified.

2. Ground Conditions. Customer assumes all responsibility and is solely liable for the ground or soil conditions in the area where the Equipment is to be stored, parked, assembled, disassembled, or operated. Customer shall perform or has performed all necessary inspections or testing to determine the nature of the ground or soil and its ability to support the Equipment while in operation or otherwise. Customer shall be responsible for any ground or soil remediation actions required to support the Equipment during the term of this Agreement including, but not limited to matting, load spreaders, and plating.

3. Power Lines. Customer is responsible to protect the Equipment and persons in and around the Equipment from the danger of power lines and shall not expose the Equipment or any persons in or around the Equipment to the dangers associated with power lines.

4. Hoisting of Personnel. Hoisting of personnel is strictly prohibited under this Agreement unless all conditions set forth in OSHA's 29 CFR 1926.1431 Subpart CC (Cranes & Derricks in Construction) and specifically Hoisting of Personnel are met. If the conditions are satisfied, all actions necessary to comply with Subpart CC 1926.1431 and ensure safety are the sole responsibility of Customer.

5. Site Conditions, Transportation and Permits. Customer is responsible for all expenses and liabilities associated with preparing and maintaining the project site for use, support, and storage of the Equipment, including but not limited to traffic control, barricades, signage and roadway permits. Customer shall provide suitable access, egress, clearances, turn radii for the delivery and pick up of the Equipment from the project site. Unless prior arrangements are made in writing with the Buckner, Customer is responsible for all expenses associated with delivery or pickup delays, frost laws, government regulatory delays, special project site handling, and double handling of the Equipment. Customer shall secure all necessary permits, permissions, and clearances required for use of the Equipment on the project site. Any delay caused by securing such permits shall be at the expense of Customer. Unless otherwise stated, Customer shall be responsible for all transportation expenses.

6. Direction of Equipment. Customer shall provide or otherwise select competent and experienced personnel to direct the operation of the Equipment pursuant to OSHA 29 CFR 1926.1400 - 1437 Subpart CC as they may apply and the ASME B30.5-2018 standards including but not limited to "Qualifications and Responsibilities" for Crane Users, Site Supervisors and Lift Directors. Customer shall use the standard crane and derrick signals in accordance with OSHA 1226.1400 Appendix A and or American National Standards Institute and American Standard B30.5-2018 (and as amended) to direct Operator at all times when applicable.

7. Compliance with Laws. Customer shall comply with and conform to all municipal, county, state and Federal laws, ordinances, rules, regulations and the like pertaining to the safe use, maintenance and/or operation of the Equipment.

8. Equipment Deposit. The Equipment deposit (the "**Deposit**") is non-refundable and shall be credited against the last month's rental charges. In the event Customer cancels this Agreement, the Deposit shall not be returned, and Customer shall be responsible for the amounts due under this Agreement. The Deposit shall be refunded only if Buckner fails to make the Equipment available within 15 calendar days of the Rental Date.

9. Rental Period. The rental charges shall commence on the earlier of: (i) the Rental Date or (ii) the delivery of the first main Equipment components to the project site. The rental charges shall end, subject to any minimum rental durations, on the latter of: (i) 15 days after Customer provides written notice to Buckner of its intent to return the Equipment emailed to offrent@bucknerheavylift.com or, (ii) the mobilization out of the last main Equipment components from the project site. Nothing contained in this Section shall, other than expressly set forth herein, act to modify any minimum rental durations or other billing or invoices minimums or terms. Buckner has the right to reject any request to extend the rental term at any time in its sole discretion. In addition to the other rights in this Agreement, Buckner has the right to retrieve the Equipment at any time after the minimum rental duration. If Customer refuses to return the Equipment, this may cause damages to Buckner, and Buckner has the right to charge triple the pro rata monthly rental rate for such time when Customer refuses to allow Buckner to retrieve its Equipment. This Agreement is non-cancelable during the minimum rental duration.

10. Changes to Equipment Configuration. Customer must submit any request to modify the Equipment configuration to Buckner at paperwork@bucknerheavylift.com at least 15 days prior to such requested change. Buckner reserves the right, in its sole discretion, to approve and deny any such request depending on its schedule and availability.

11. Changes to Rental Date. Customer may not move the Rental Date without Buckner's written consent. Customer may not request a change to the Rental Date exceeding seven (7) days and may only request one change. Requests to the Rental



| Customer Initials | Buckner Initials |
|---|---|
| | DS |

Date must be made to paperwork@bucknerheavylift.com., and such request must be made no later than:

| | |
|---|---|
| Days in Advance | 30 |

In the event Customer fails to comply with these requirements, rent shall start in accordance with Paragraph 9.

~~12. Overtime Charges. If Customer operates the Equipment in any month in excess of the allotted Monthly Hours, Customer shall pay the hourly rate set out above for each hour in excess of the Monthly Hours. Equipment hours for purposes of Equipment overtime charges shall be calculated using the Operator hours on the Daily Crane Ticket each day, not including travel time.~~

13. Freight and Mobilization/ Demobilization. Buckner and Customer's respective responsibilities for mobilization and de-mobilization are as set out below:

| | Buckner | Customer |
|---|---|---|
| Permits | X | |
| Freight to Site | X | |
| Freight from Site | X | |
| Crane Build/Tear Down Supervisor, Qualified Signal Person and Crews | | X |
| Crane Build/Tear Down Technician | X | |
| On-Site Move Technician | X | |
| Support Cranes and Equipment | | X |

Unless otherwise set forth herein, Customer is responsible for the costs of all such activities.

14. Equipment Transport During Term. Equipment moves during the rental, other than initial mobilization and final demobilization, shall be arranged for and paid by Customer. This includes, but is not limited to, support cranes, manpower, loading and un-loading of all Equipment and components, transit insurance for the Equipment and transport vehicles. In addition, any such moves shall comply with the following:

14.1 All tear-down and erection shall be arranged and paid for by Customer and must, unless otherwise agreed upon in writing, be conducted with the technical input of a Buckner Technician.

14.2 All equipment, personnel and associated expenses required for the transport of the Equipment between locations are the responsibility of Customer.

15. Technicians and Operators. In the event Buckner supplies a technician or other technical advisor (collectively the "**Technician**") or an Operator during the Term, such shall be provided purely as an accommodation for Customer. During the term of this Agreement, Customer agrees to be solely responsible and liable for: (i) for the actions of the Technician and the Operator in as a leased employee, (ii) the supervision and control over the Technician and Operator, including control over the manner or means of their performance of work, and (iii) any injuries to the Technician or Operator. Customer may require the removal of any Operator or Technician. In the event Customer requests a Technician, Customer shall provide Buckner with at least seventy-two (72) hours' written notice by email to cranetech@bucknerheavylift.com. Daily rates for Technicians are quoted using a ten (10) hour day and additional hours beyond ten (10) shall be billed to Customer at an hourly or a pro rata rate. Technician and Operator hours are charged portal to portal and include travel time. Travel and other expenses shall be billed at cost plus 15%. In the event Buckner provides a Technician to Customer for the erection/teardown of the Equipment, Customer is responsible to provide both the crew and the supervisor for this activity.

16. Warranty. Buckner warrants the Equipment is in good, operating condition when delivered. Unless Customer notifies Buckner in writing within 5 days after Equipment is delivered, Customer accepts the Equipment and acknowledges it is good, safe, serviceable, and fit for Customer's intended use. BUCKNER DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED AS TO THE EQUIPMENT OR OTHERWISE. Customer's sole and exclusive remedy for Buckner's breach of this Agreement, including any breach of warranty or downtime of the Equipment, shall be an abatement of rent for the duration of the breach.

17. Title. Title to the Equipment shall at all times remain with Buckner and Customer shall have no right, title or interest therein or thereto except as expressly provided by this Agreement. Customer shall ensure that neither the Equipment nor any part thereof shall become subject to any actual or threatened lien, charge, encumbrance or claim. Customer shall provide Buckner with immediate notice in the event that the Equipment does become subject to any lien, charge, encumbrance or claim and shall take all necessary measures to have such interest discharged. In the event that Customer fails to comply with the requirements of this clause, Buckner may in its sole discretion take any necessary steps to discharge such interest and Customer shall reimburse all costs



| Customer Initials | Buckner Initials |
|---|---|
| | |

and compensate all losses incurred by Buckner.

18. Modification to Equipment. Customer shall not remove, alter, disfigure or cover up any numbering, lettering or insignia displayed upon the Equipment, and shall ensure the Equipment is not subject to careless or needless rough usage, or exposed to any hazardous or corrosive chemicals.

19. Taxes, Charges by Authorities. Buckner shall be responsible for income and property taxes associated with the Equipment provided under this Agreement. Customer shall be responsible for, and pay and discharge when due, all other license fees, assessments, and all taxes including all sales, use, rental, excise goods and services, and other taxes or duties now or hereafter imposed by any local, state or federal government or taxing authority upon the Equipment whether the same are payable by or billed or assessed to Buckner or Customer, together with any penalties or interest in connection therewith. Where the period of such tax or fee commences prior to or extends beyond the Term, the cost shall be pro-rated as between Buckner and Customer accordingly. Buckner shall include sales tax and any other applicable taxes on each invoice unless Customer provides Buckner with a current sales tax exemption form in Customer's name prior to such monthly billing cycle.

20. Limitation of Liability.

20.1 Buckner shall not be liable to Customer for any damage or loss to persons or property or for any consequential or indirect damages, whether or not such loss or damage is caused or contributed to or by the rental, ownership, delivery, operation, use, maintenance, handling, transportation, possession or repossession of the Equipment, or by any defect therein, or by any other cause or reason whatsoever, other than for the gross negligence of Buckner. Other than for Buckner's gross negligence, Customer shall be responsible for all damage to the Equipment during the term of this Agreement. Buckner's total liability to Customer under this Agreement, regardless of cause, shall not exceed 50% of the monthly rental rate.

20.2 In no event shall Buckner be liable or responsible for any delays, work stoppages, loss of use of Equipment, lost time, lost profits, inconvenience, or any indirect, incidental, special, liquidated, punitive, or consequential damages or losses arising therefrom. In the event of any mechanical failure or breakdown of the Equipment for which Buckner is responsible, regardless of cause, Customer's sole and exclusive remedy shall be an abatement of rent for the duration of the failure or breakdown. All limits of Buckner's liability contained in this Agreement or elsewhere shall survive the termination of this Agreement or any renewals thereof.

20.3 Customer shall be responsible for all additional costs arising from incorrect or incomplete information provided by Customer.

21. Indemnity. Each party shall indemnify, defend and hold harmless the other, and its employees against any third-party claims, losses, costs, expenses, penalties, damages, liabilities, actions and suits of every kind and nature (collectively a "Claim"), caused by the indemnifying party's: (a) acts or omissions, including that of project personnel for whom such party is responsible to supervise and control under applicable law or this Agreement; (b) beach of this Agreement, (c) violation of any applicable law. The indemnity obligations include all costs, including legal costs, which may at any time be required to pay or which may be imposed, incurred by or asserted against the indemnified party, its agents and employees whether for personal injuries (including death) and/or property damage suffered by any person. These indemnity obligations hereunder shall be in addition to any other rights available and shall not be limited in any manner by any insurance limits, limits on the amount or type of damages, compensation or benefits payable by or for the indemnifying party under any applicable worker's compensation policy, disability benefits, or other employee benefits statute. The provisions of this Section shall survive termination.

22. Insurance: Buckner and Customer shall at all times maintain: (1) $1,000,000.00 comprehensive general liability coverage per occurrence and an additional $5,000,000.00 umbrella, (2) inland marine property coverage listing the Equipment by name and serial number for its full value; (3) worker's compensation insurance coverage with statutory minimum limits, and (4) automobile liability coverage with $1,000,000.00 per occurrence limits. Certificate of Insurance shall contain an acknowledgement by the Insurance Companies agreeing to give Buckner thirty (30) days prior written notice of cancellation or material alteration or change of coverage provided and to include Buckner Heavy Lift Cranes as an additional insured for the general liability, auto and worker's compensation and as lender loss payee for the inland marine property policy, with waiver of subrogation.

23. Customer Responsibilities: Customer agrees that it is solely responsible for: (i) the Equipment and the Operator and that they are under Customer's exclusive jurisdiction, possession, supervision, and control during the term of the rental, (ii) fuel during the rental, (iii) any damage or loss caused by the Operator or Equipment while it is under Customer's supervision and control, (iv) providing overall project site safety and accurate load weights, (v) all load rigging, hooking, and unhooking, **(vi) ongoing rental charges, up to 7 days, in the event of costs or damages caused by acts of god, or severe weather, corrosive (Buckner responsible for costs), or (vii) damaging environmental conditions at the project site.**

24. Risk of Loss/Damage. Buckner providing support to Customer, including but not limited to lift plans, a mechanic, or a Technician, is done purely as an accommodation shall in no way alter Customer's responsibilities for damage or loss under this



| Customer Initials | DS Buckner Initials |
|---|---|
| | |

Agreement. In the event Customer is responsible for damage or loss to the Equipment under this Agreement, rent shall continue until the Equipment is fully repaired and available to Buckner for use.

25. No Reliance on Load Measuring Device or Anemometer. If the Equipment has been fitted with a load measuring device or anemometer, Customer acknowledges and agrees that: (a) Buckner has made no warranties or representations whatsoever with respect to the ability of such a load measuring device to accurately or consistently measure weight or wind speeds; (b) it is the responsibility of Customer to independently determine weights and wind speeds during operation so as to ensure that any load or lift does not exceed the rates determined by such Equipment's capacity chart and that the load measuring device or anemometer shall be used as an operator aid only; and (c) if Customer relies upon any such device, Customer does so at its own risk.

26. Accident/Damage Reporting. Customer shall immediately notify Buckner of any accident involving personal injury and/or property damage (including damage to the Equipment). Customer shall immediately deliver to Buckner any summons, pleading, notice, or paper of any kind involving any claim, suit or proceeding relating to any accident or event involving the Equipment.

27. Events of Default: Any of the following occurrences shall constitute an "Event of Default": (a) failure by Customer to pay any amount that is due to Buckner within 5 days of such payment becoming due; (b) the Equipment becoming subject to any lien, charge, encumbrance or claim; (c) Customer being subject to any proceedings respecting bankruptcy, insolvency, arrangements with creditors, winding up, dissolution, liquidation or appointment of receivers; or (d) Customers' breach of any provision of this Agreement not remedied within 5 days of Buckner giving Customer notice of default. Immediately upon the occurrence or continuation of an Event of Default, Buckner may terminate this Agreement, recover possession of the Equipment and shall be entitled to all amounts due and payable under this Agreement. If applicable, Customer shall also pay to Buckner any expenses incurred by Buckner in connection with or relating to the recovery of the Equipment, including any legal fees paid by Buckner. Buckner may exercise any of the above remedies or steps alternatively or cumulatively and in addition to any other rights or remedies which may be available to Buckner at law or equity. Customer hereby grants Buckner an irrevocable license to enter Customer's premises where the Equipment is located to repossess the Equipment in the event of default or termination of this Agreement for any cause.

28. No Set-Off or Deduction. Customer shall not be entitled to set-off or deduct from any amounts payable under this Agreement any monies which it may claim are owed by Buckner to Customer.

29. Payment. Customer shall pay all charges to Buckner at the rates contained herein and payments shall be made to Buckner at 4732 NC Highway 54 East, Graham, NC 27253. All charges are due and payable in accordance with the Payment Terms above from date of invoice. Buckner shall invoice monthly rental charges in advance. Buckner shall invoice freight charges 30 days prior to the scheduled delivery date and the charges are due and payable prior to commencement of transportation activities or as otherwise specified herein. Disputes to invoices must be raised in writing, with a copy sent to AR@bucknerheavylift.com, with Buckner no later than thirty (30) days from the Invoice date or they are waived.

29.1 Overdue payments. Any overdue payments shall bear service and late charges of 1.5% per month, being 18% per annum, on accounts over 30 days until the account is paid in full. Sums are computed and compounded monthly as per the agreed billing cycle.

29.2 Payment and Assignment of Debt. In the event of invoices remaining unpaid by Customer 30 days after invoice date, Customer, in consideration of the Equipment provided by Buckner herein, hereby assigns and transfers in writing to Buckner, to the extent of all monies owed by Customer to Buckner, absolutely all money and amount presently owed or that may become payable to Customer, including all monies owed, by Buckner of the Site where the Equipment is located or used or any other property on which the Equipment is operated during the term of this Agreement, or by any contractor or sub-contractor to whom Customer is owed monies by. Customer hereby discharges and releases any party making payment under the assignment and transfer from any further claim for monies so paid to Buckner. In the event of any such assignment and transfer, Buckner shall have the right to provide a copy of this written assignment and transfer to such Buckner, contractor or sub-contractor, as the case may be, for ratification of that assignment and transfer by that party. If Buckner elects, any money paid to Buckner, may be applied by Buckner as payment, first to any late charges, interest charges, handling charges, legal fees & disbursements, repair charges or any other charges accruing under the terms of this Agreement, which Buckner may be obliged to advance, make or incur, and then apply such money on the amounts due for the rental.

30. Assignment and Sub-Renting. Customer shall not assign or attempt to assign this Agreement or any of its rights under this Agreement or in or to all or any part of the Equipment without the prior written consent of Buckner, which may be arbitrarily withheld. Buckner may assign its rights hereunder or in or to any of the Equipment.

31. Survival. Neither termination nor expiry of this Agreement shall release or relieve the parties from any of their obligations or liabilities under the Agreement which expressly or by their nature survive the termination or expiry, including



| Customer Initials | DS Buckner Initials |
| --- | --- |
| | |

obligations and liabilities in respect of indemnification and limitation of liability.

32. Notice. Any notice to be given under this Agreement shall be mailed by prepaid registered post or sent via email to the applicable address in this Agreement. If mailed, the notice shall be deemed to have been given on the fourth business day following that on which the notice was mailed. If sent by facsimile, the notice shall be deemed to have been given on the next business day following that on which the notice was faxed.

33. Legal Fees. In the event of any litigation arising out of the execution of this Agreement or any claimed breach thereof, the prevailing party in such litigation shall be entitled to recover its reasonable lawyers' fees (including on appeal thereof), on a solicitor and own client basis, and reasonable costs of litigation, in addition to any other award or decree granted or given by the court.

34. Invalid Provision. The invalidity or unenforceability of any portion of this Agreement shall not affect the validity or enforceability of the remaining provisions hereof. Should any provision of this Agreement be ruled unenforceable or invalid, the Agreement shall be construed as if such provision did not exist.

35. Binding Effect. This Agreement shall be binding upon and shall ensure to the benefit of the parties hereto and their respective successors or permitted assigns.

36. Governing Law. This Agreement shall be construed under and enforced in accordance with the laws of the State of North Carolina. Customer agrees that exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the United States District Court of the State of North Carolina. Any provision of this Agreement that conflicts with any law in any jurisdiction wherein it may be sought to be enforced, or that is otherwise deemed to be invalid and/or unenforceable, shall not operate to invalidate the remaining provisions hereof. The parties hereby waive trial by jury with respect to any action, claim, suit, or proceeding connected herewith. The prevailing party shall be entitled to attorney fees in any action brought under this Agreement.

37. Entire Agreement: This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and there are no other representations, warranties or conditions, express or implied, other than as stated herein. This Agreement may be amended only by a written amendment signed by both parties. It is expressly agreed that this Agreement sets forth the sole and exclusive remedies of Customer in respect of the rental of the Equipment and that Buckner's liabilities are as set out herein. Even where the Purchase Order number of Customer is referenced in this Agreement, or Customer has submitted to Buckner a Purchase Order or terms of purchase or lease, the terms and conditions set out in this Agreement remain the sole and exclusive terms and conditions upon which the Equipment is rented.

38. Counterparts: This Agreement may be executed in any number of counterparts, each of which when executed and delivered (by facsimile or otherwise) shall be deemed to be an original, and all of which together shall constitute one and the same document.

39. IN WITNESS WHEREOF, the parties have read all provisions which are a part of this Agreement and have executed this Agreement on the date first above written.

| Buckner HeavyLift Cranes, LLC | S'n'S Erectors Inc. |
|---|---|
| DocuSigned by: Brian C Miller 06ED5A2C87CE4E0... | |
| By: Brian Miller | By: [signature] |
| Its: Vice President - Sales | Its: President |
| Date: 9/21/2022 | Date: 9/15/22 |



| Customer Initials | DS Buckner Initials |
|---|---|
| [initials] | BCM |

# CHANGE ORDER TO OPERATED RENTAL AGREEMENT

This Change Order (the "**Change Order**") to the Operated Rental Equipment Rental Agreement for Equipment HC2236, Liebherr LTR1220 s/n 47654 dated August 17, 2022 (the "**Agreement**") between Buckner Heavylift Cranes, LLC ("**Buckner**") and S'n'S Erectors Inc. ("**Customer**"), is entered into on this 17th day of August 2022 (the "**Effective Date**").

WHEREAS, transportations costs have increased due to a delay in executing the Agreement; and

WHEREAS, Customer has agreed to compensate Buckner for the documented cost of the increase; and

THEREFORE, the Change Order modifies the Agreement as follows:

1. Transportation: The transportation charges set forth in the Agreement are subject to the following changes:

| **Transportation Increase** | |
|---|---|
| | Amount/Terms |
| Mobilization Increase | $ 2,500.00 |

2. Other Terms. Other than expressly modified by this Change Order, the terms of the original Agreement, including any Exhibits, remain in full force and effect and shall continue to govern the relationship between the Parties. Nothing contained in this Change Order shall in any way modify Wanzek's obligations with respect to the Equipment under the Agreement. Wanzek acknowledges that any certificate of insurance applies to this Change Order in the same manner as the Agreement.

**BUCKNER**

DocuSigned by:
Brian C Miller
06ED5A2C87CE4E0...

By: Brian Miller

Its: Vice President - Sales

**CUSTOMER**

By: [signature]

Its: President

BUCKNER HEAVYLIFT CRANES

Job Number:____________

## EQUIPMENT RENTAL AGREEMENT - OPERATED

THIS AGREEMENT made this day 17th, of August 2022.

BETWEEN BUCKNER:

Buckner Heavylift Cranes, LLC ("**Buckner**")
4732 HWY 54 S
Graham, NC 27253
Phone: 336-376-8888
Contact: Jeff Holmes
Email: jeffh@bucknercompanies.com

AND CUSTOMER

S'n'S Erectors Inc. ("**Customer**")
Burleson, Texas 76017
2351 Co Rd 404, Taylor, TX, 76574
Authorized Contact: Jason Stout
Email: jason@snserectors.com

1. Equipment & Rate: Buckner rents to Customer the equipment identified below, including any additional equipment and accessories identified herein (collectively the "**Equipment**""), at the rates shown below and, on the terms, and conditions contained in this Agreement. In addition, Buckner shall provide Customer with one or more operators ("**Operator**) for the Equipment. Operator shall at all times operate and maintain the Equipment under the exclusive direction of Customer. Customer agrees not to transfer the Equipment or allow anyone else to direct its operation.

| Unit # | Configuration | Make | Model | Serial No. | Value |
|---|---|---|---|---|---|
| HC2226 | Hydro | Liebherr | LTR1220 | 96600 | $1,900,000.00 |

| Minimum Term | Rental Start | Weekly Hours | Payment Terms | Billing Cycle (Days) |
|---|---|---|---|---|
| 3 mo. | ~~December 5, 2022~~ Dec 5th – Jan 5th J.S. | Minimum 50 | Net 30 | 28 |

DS BCM

| | |
|---|---|
| Hourly Rate | $ 305.00 |
| Second Shift | N/A |

| Matting | Description | Rate/Terms |
|---|---|---|
| S'n'S Responsible | N/A | N/A |

| Transportation | |
|---|---|
| | Amount/Terms |
| Mobilization | $ 22,500.00 |
| Demobilization | $ 22,500.00 |
| Delivery Address | 2351 Co Rd 404, Taylor, TX, 76574 |

| Equipment Technicians | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | N/A | N/A |
| Daily Rate | A/D Tech included into transportation cost. Any technician required outside of initial assembly or final disassembly will be invoiced at $1,950.00/day up to 10 hours | |
| Lump Sum | N/A | |
| Per Diem | $125.00 | |

| Operators | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | Included in hourly rate above | Included in hourly rate above |
| Per Diem | $ 125.00 | |
| Weekly minimum hours | 50 | |

DocuSign Envelope ID: 75C61220-7167-4A39-98EA-D55C6E0D08B8

| Special Considerations |
|---|
| |

All prices in USD unless otherwise specified. Per diem is charged seven days per week unless otherwise specified.

2. Ground Conditions. Customer assumes all responsibility and is solely liable for the ground or soil conditions in the area where the Equipment is to be stored, parked, assembled, disassembled, or operated. Customer shall perform or has performed all necessary inspections or testing to determine the nature of the ground or soil and its ability to support the Equipment while in operation or otherwise. Customer shall be responsible for any ground or soil remediation actions required to support the Equipment during the term of this Agreement including, but not limited to matting, load spreaders, and plating.

3. Power Lines. Customer is responsible to protect the Equipment and persons in and around the Equipment from the danger of power lines and shall not expose the Equipment or any persons in or around the Equipment to the dangers associated with power lines.

4. Hoisting of Personnel. Hoisting of personnel is strictly prohibited under this Agreement unless all conditions set forth in OSHA's 29 CFR 1926.1431 Subpart CC (Cranes & Derricks in Construction) and specifically Hoisting of Personnel are met. If the conditions are satisfied, all actions necessary to comply with Subpart CC 1926.1431 and ensure safety are the sole responsibility of Customer.

5. Site Conditions, Transportation and Permits. Customer is responsible for all expenses and liabilities associated with preparing and maintaining the project site for use, support, and storage of the Equipment, including but not limited to traffic control, barricades, signage and roadway permits. Customer shall provide suitable access, egress, clearances, turn radii for the delivery and pick up of the Equipment from the project site. Unless prior arrangements are made in writing with the Buckner, Customer is responsible for all expenses associated with delivery or pickup delays, frost laws, government regulatory delays, special project site handling, and double handling of the Equipment. Customer shall secure all necessary permits, permissions, and clearances required for use of the Equipment on the project site. Any delay caused by securing such permits shall be at the expense of Customer. Unless otherwise stated, Customer shall be responsible for all transportation expenses.

6. Direction of Equipment. Customer shall provide or otherwise select competent and experienced personnel to direct the operation of the Equipment pursuant to OSHA 29 CFR 1926.1400 - 1437 Subpart CC as they may apply and the ASME B30.5-2018 standards including but not limited to "Qualifications and Responsibilities" for Crane Users, Site Supervisors and Lift Directors. Customer shall use the standard crane and derrick signals in accordance with OSHA 1226.1400 Appendix A and or American National Standards Institute and American Standard B30.5–2018 (and as amended) to direct Operator at all times when applicable.

7. Compliance with Laws. Customer shall comply with and conform to all municipal, county, state and Federal laws, ordinances, rules, regulations and the like pertaining to the safe use, maintenance and/or operation of the Equipment.

8. Equipment Deposit. The Equipment deposit (the "**Deposit**") is non-refundable and shall be credited against the last month's rental charges. In the event Customer cancels this Agreement, the Deposit shall not be returned, and Customer shall be responsible for the amounts due under this Agreement. The Deposit shall be refunded only if Buckner fails to make the Equipment available within 15 calendar days of the Rental Date.

9. Rental Period. The rental charges shall commence on the earlier of: (i) the Rental Date or (ii) the delivery of the first main Equipment components to the project site. The rental charges shall end, subject to any minimum rental durations, on the latter of: (i) 15 days after Customer provides written notice to Buckner of its intent to return the Equipment emailed to offrent@bucknerheavylift.com or, (ii) the mobilization out of the last main Equipment components from the project site. Nothing contained in this Section shall, other than expressly set forth herein, act to modify any minimum rental durations or other billing or invoices minimums or terms. Buckner has the right to reject any request to extend the rental term at any time in its sole discretion. In addition to the other rights in this Agreement, Buckner has the right to retrieve the Equipment at any time after the minimum rental duration. If Customer refuses to return the Equipment, this may cause damages to Buckner, and Buckner has the right to charge triple the pro rata monthly rental rate for such time when Customer refuses to allow Buckner to retrieve its Equipment. This Agreement is non-cancelable during the minimum rental duration.

10. Changes to Equipment Configuration. Customer must submit any request to modify the Equipment configuration to Buckner at paperwork@bucknerheavylift.com at least 15 days prior to such requested change. Buckner reserves the right, in its sole discretion, to approve and deny any such request depending on its schedule and availability.

11. Changes to Rental Date. Customer may not move the Rental Date without Buckner's written consent. Customer may not request a change to the Rental Date exceeding seven (7) days and may only request one change. Requests to the Rental



| Customer Initials | Buckner Initials |
|---|---|
| | DS |

Date must be made to paperwork@bucknerheavylift.com., and such request must be made no later than:

| | |
|---|---|
| Days in Advance | 30 |

In the event Customer fails to comply with these requirements, rent shall start in accordance with Paragraph 9.

~~12. Overtime Charges. If Customer operates the Equipment in any month in excess of the allotted Monthly Hours, Customer shall pay the hourly rate set out above for each hour in excess of the Monthly Hours. Equipment hours for purposes of Equipment overtime charges shall be calculated using the Operator hours on the Daily Crane Ticket each day, not including travel time.~~

13. Freight and Mobilization/ Demobilization. Buckner and Customer's respective responsibilities for mobilization and de-mobilization are as set out below:

| | Buckner | Customer |
|---|---|---|
| Permits | X | |
| Freight to Site | X | |
| Freight from Site | X | |
| Crane Build/Tear Down Supervisor, Qualified Signal Person and Crews | | X |
| Crane Build/Tear Down Technician | X | |
| On-Site Move Technician | X | |
| Support Cranes and Equipment | | X |

Unless otherwise set forth herein, Customer is responsible for the costs of all such activities.

14. Equipment Transport During Term. Equipment moves during the rental, other than initial mobilization and final demobilization, shall be arranged for and paid by Customer. This includes, but is not limited to, support cranes, manpower, loading and un-loading of all Equipment and components, transit insurance for the Equipment and transport vehicles. In addition, any such moves shall comply with the following:

14.1 All tear-down and erection shall be arranged and paid for by Customer and must, unless otherwise agreed upon in writing, be conducted with the technical input of a Buckner Technician.

14.2 All equipment, personnel and associated expenses required for the transport of the Equipment between locations are the responsibility of Customer.

15. Technicians and Operators. In the event Buckner supplies a technician or other technical advisor (collectively the "**Technician**") or an Operator during the Term, such shall be provided purely as an accommodation for Customer. During the term of this Agreement, Customer agrees to be solely responsible and liable for: (i) for the actions of the Technician and the Operator in as a leased employee, (ii) the supervision and control over the Technician and Operator, including control over the manner or means of their performance of work, and (iii) any injuries to the Technician or Operator. Customer may require the removal of any Operator or Technician. In the event Customer requests a Technician, Customer shall provide Buckner with at least seventy-two (72) hours' written notice by email to cranetech@bucknerheavylift.com. Daily rates for Technicians are quoted using a ten (10) hour day and additional hours beyond ten (10) shall be billed to Customer at an hourly or a pro rata rate. Technician and Operator hours are charged portal to portal and include travel time. Travel and other expenses shall be billed at cost plus 15%. In the event Buckner provides a Technician to Customer for the erection/teardown of the Equipment, Customer is responsible to provide both the crew and the supervisor for this activity.

16. Warranty. Buckner warrants the Equipment is in good, operating condition when delivered. Unless Customer notifies Buckner in writing within 5 days after Equipment is delivered, Customer accepts the Equipment and acknowledges it is good, safe, serviceable, and fit for Customer's intended use. BUCKNER DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED AS TO THE EQUIPMENT OR OTHERWISE. Customer's sole and exclusive remedy for Buckner's breach of this Agreement, including any breach of warranty or downtime of the Equipment, shall be an abatement of rent for the duration of the breach.

17. Title. Title to the Equipment shall at all times remain with Buckner and Customer shall have no right, title or interest therein or thereto except as expressly provided by this Agreement. Customer shall ensure that neither the Equipment nor any part thereof shall become subject to any actual or threatened lien, charge, encumbrance or claim. Customer shall provide Buckner with immediate notice in the event that the Equipment does become subject to any lien, charge, encumbrance or claim and shall take all necessary measures to have such interest discharged. In the event that Customer fails to comply with the requirements of this clause, Buckner may in its sole discretion take any necessary steps to discharge such interest and Customer shall reimburse all costs



| Customer Initials | Buckner Initials |
|---|---|
| | DS |

and compensate all losses incurred by Buckner.

18. Modification to Equipment. Customer shall not remove, alter, disfigure or cover up any numbering, lettering or insignia displayed upon the Equipment, and shall ensure the Equipment is not subject to careless or needless rough usage, or exposed to any hazardous or corrosive chemicals.

19. Taxes, Charges by Authorities. Buckner shall be responsible for income and property taxes associated with the Equipment provided under this Agreement. Customer shall be responsible for, and pay and discharge when due, all other license fees, assessments, and all taxes including all sales, use, rental, excise goods and services, and other taxes or duties now or hereafter imposed by any local, state or federal government or taxing authority upon the Equipment whether the same are payable by or billed or assessed to Buckner or Customer, together with any penalties or interest in connection therewith. Where the period of such tax or fee commences prior to or extends beyond the Term, the cost shall be pro-rated as between Buckner and Customer accordingly. Buckner shall include sales tax and any other applicable taxes on each invoice unless Customer provides Buckner with a current sales tax exemption form in Customer's name prior to such monthly billing cycle.

20. Limitation of Liability.

20.1 Buckner shall not be liable to Customer for any damage or loss to persons or property or for any consequential or indirect damages, whether or not such loss or damage is caused or contributed to or by the rental, ownership, delivery, operation, use, maintenance, handling, transportation, possession or repossession of the Equipment, or by any defect therein, or by any other cause or reason whatsoever, other than for the gross negligence of Buckner. Other than for Buckner's gross negligence, Customer shall be responsible for all damage to the Equipment during the term of this Agreement. Buckner's total liability to Customer under this Agreement, regardless of cause, shall not exceed 50% of the monthly rental rate.

20.2 In no event shall Buckner be liable or responsible for any delays, work stoppages, loss of use of Equipment, lost time, lost profits, inconvenience, or any indirect, incidental, special, liquidated, punitive, or consequential damages or losses arising therefrom. In the event of any mechanical failure or breakdown of the Equipment for which Buckner is responsible, regardless of cause, Customer's sole and exclusive remedy shall be an abatement of rent for the duration of the failure or breakdown. All limits of Buckner's liability contained in this Agreement or elsewhere shall survive the termination of this Agreement or any renewals thereof.

20.3 Customer shall be responsible for all additional costs arising from incorrect or incomplete information provided by Customer.

21. Indemnity. Each party shall indemnify, defend and hold harmless the other, and its employees against any third-party claims, losses, costs, expenses, penalties, damages, liabilities, actions and suits of every kind and nature (collectively a "Claim"), caused by the indemnifying party's: (a) acts or omissions, including that of project personnel for whom such party is responsible to supervise and control under applicable law or this Agreement; (b) beach of this Agreement, (c) violation of any applicable law. The indemnity obligations include all costs, including legal costs, which may at any time be required to pay or which may be imposed, incurred by or asserted against the indemnified party, its agents and employees whether for personal injuries (including death) and/or property damage suffered by any person. These indemnity obligations hereunder shall be in addition to any other rights available and shall not be limited in any manner by any insurance limits, limits on the amount or type of damages, compensation or benefits payable by or for the indemnifying party under any applicable worker's compensation policy, disability benefits, or other employee benefits statute. The provisions of this Section shall survive termination.

22. Insurance: Buckner and Customer shall at all times maintain: (1) $1,000,000.00 comprehensive general liability coverage per occurrence and an additional $5,000,000.00 umbrella, (2) inland marine property coverage listing the Equipment by name and serial number for its full value; (3) worker's compensation insurance coverage with statutory minimum limits, and (4) automobile liability coverage with $1,000,000.00 per occurrence limits. Certificate of Insurance shall contain an acknowledgement by the Insurance Companies agreeing to give Buckner thirty (30) days prior written notice of cancellation or material alteration or change of coverage provided and to include Buckner Heavy Lift Cranes as an additional insured for the general liability, auto and worker's compensation and as lender loss payee for the inland marine property policy, with waiver of subrogation.

23. Customer Responsibilities: Customer agrees that it is solely responsible for: (i) the Equipment and the Operator and that they are under Customer's exclusive jurisdiction, possession, supervision, and control during the term of the rental, (ii) fuel during the rental, (iii) any damage or loss caused by the Operator or Equipment while it is under Customer's supervision and control, (iv) providing overall project site safety and accurate load weights, (v) all load rigging, hooking, and unhooking, (vi) ongoing rental charges, up to 7 days, in the event of costs or damages caused by acts of god, or severe weather, corrosive (Buckner responsible for costs), or (vii) damaging environmental conditions at the project site.

24. Risk of Loss/Damage. Buckner providing support to Customer, including but not limited to lift plans, a mechanic, or a Technician, is done purely as an accommodation shall in no way alter Customer's responsibilities for damage or loss under this



| Customer Initials | Buckner Initials |
|---|---|
| | DS CM |

Agreement. In the event Customer is responsible for damage or loss to the Equipment under this Agreement, rent shall continue until the Equipment is fully repaired and available to Buckner for use.

25. No Reliance on Load Measuring Device or Anemometer. If the Equipment has been fitted with a load measuring device or anemometer, Customer acknowledges and agrees that: (a) Buckner has made no warranties or representations whatsoever with respect to the ability of such a load measuring device to accurately or consistently measure weight or wind speeds; (b) it is the responsibility of Customer to independently determine weights and wind speeds during operation so as to ensure that any load or lift does not exceed the rates determined by such Equipment's capacity chart and that the load measuring device or anemometer shall be used as an operator aid only; and (c) if Customer relies upon any such device, Customer does so at its own risk.

26. Accident/Damage Reporting. Customer shall immediately notify Buckner of any accident involving personal injury and/or property damage (including damage to the Equipment). Customer shall immediately deliver to Buckner any summons, pleading, notice, or paper of any kind involving any claim, suit or proceeding relating to any accident or event involving the Equipment.

27. Events of Default: Any of the following occurrences shall constitute an "Event of Default": (a) failure by Customer to pay any amount that is due to Buckner within 5 days of such payment becoming due; (b) the Equipment becoming subject to any lien, charge, encumbrance or claim; (c) Customer being subject to any proceedings respecting bankruptcy, insolvency, arrangements with creditors, winding up, dissolution, liquidation or appointment of receivers; or (d) Customers' breach of any provision of this Agreement not remedied within 5 days of Buckner giving Customer notice of default. Immediately upon the occurrence or continuation of an Event of Default, Buckner may terminate this Agreement, recover possession of the Equipment and shall be entitled to all amounts due and payable under this Agreement. If applicable, Customer shall also pay to Buckner any expenses incurred by Buckner in connection with or relating to the recovery of the Equipment, including any legal fees paid by Buckner. Buckner may exercise any of the above remedies or steps alternatively or cumulatively and in addition to any other rights or remedies which may be available to Buckner at law or equity. Customer hereby grants Buckner an irrevocable license to enter Customer's premises where the Equipment is located to repossess the Equipment in the event of default or termination of this Agreement for any cause.

28. No Set-Off or Deduction. Customer shall not be entitled to set-off or deduct from any amounts payable under this Agreement any monies which it may claim are owed by Buckner to Customer.

29. Payment. Customer shall pay all charges to Buckner at the rates contained herein and payments shall be made to Buckner at 4732 NC Highway 54 East, Graham, NC 27253. All charges are due and payable in accordance with the Payment Terms above from date of invoice. Buckner shall invoice monthly rental charges in advance. Buckner shall invoice freight charges 30 days prior to the scheduled delivery date and the charges are due and payable prior to commencement of transportation activities or as otherwise specified herein. Disputes to invoices must be raised in writing, with a copy sent to AR@bucknerheavylift.com, with Buckner no later than thirty (30) days from the Invoice date or they are waived.

29.1 Overdue payments. Any overdue payments shall bear service and late charges of 1.5% per month, being 18% per annum, on accounts over 30 days until the account is paid in full. Sums are computed and compounded monthly as per the agreed billing cycle.

29.2 Payment and Assignment of Debt. In the event of invoices remaining unpaid by Customer 30 days after invoice date, Customer, in consideration of the Equipment provided by Buckner herein, hereby assigns and transfers in writing to Buckner, to the extent of all monies owed by Customer to Buckner, absolutely all money and amount presently owed or that may become payable to Customer, including all monies owed, by Buckner of the Site where the Equipment is located or used or any other property on which the Equipment is operated during the term of this Agreement, or by any contractor or sub-contractor to whom Customer is owed monies by. Customer hereby discharges and releases any party making payment under the assignment and transfer from any further claim for monies so paid to Buckner. In the event of any such assignment and transfer, Buckner shall have the right to provide a copy of this written assignment and transfer to such Buckner, contractor or sub-contractor, as the case may be, for ratification of that assignment and transfer by that party. If Buckner elects, any money paid to Buckner, may be applied by Buckner as payment, first to any late charges, interest charges, handling charges, legal fees & disbursements, repair charges or any other charges accruing under the terms of this Agreement, which Buckner may be obliged to advance, make or incur, and then apply such money on the amounts due for the rental.

30. Assignment and Sub-Renting. Customer shall not assign or attempt to assign this Agreement or any of its rights under this Agreement or in or to all or any part of the Equipment without the prior written consent of Buckner, which may be arbitrarily withheld. Buckner may assign its rights hereunder or in or to any of the Equipment.

31. Survival. Neither termination nor expiry of this Agreement shall release or relieve the parties from any of their obligations or liabilities under the Agreement which expressly or by their nature survive the termination or expiry, including



| Customer Initials | DS Buckner Initials |
| --- | --- |

obligations and liabilities in respect of indemnification and limitation of liability.

32. Notice. Any notice to be given under this Agreement shall be mailed by prepaid registered post or sent via email to the applicable address in this Agreement. If mailed, the notice shall be deemed to have been given on the fourth business day following that on which the notice was mailed. If sent by facsimile, the notice shall be deemed to have been given on the next business day following that on which the notice was faxed.

33. Legal Fees. In the event of any litigation arising out of the execution of this Agreement or any claimed breach thereof, the prevailing party in such litigation shall be entitled to recover its reasonable lawyers' fees (including on appeal thereof), on a solicitor and own client basis, and reasonable costs of litigation, in addition to any other award or decree granted or given by the court.

34. Invalid Provision. The invalidity or unenforceability of any portion of this Agreement shall not affect the validity or enforceability of the remaining provisions hereof: Should any provision of this Agreement be ruled unenforceable or invalid, the Agreement shall be construed as if such provision did not exist.

35. Binding Effect. This Agreement shall be binding upon and shall ensure to the benefit of the parties hereto and their respective successors or permitted assigns.

36. Governing Law. This Agreement shall be construed under and enforced in accordance with the laws of the State of North Carolina. Customer agrees that exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the United States District Court of the State of North Carolina. Any provision of this Agreement that conflicts with any law in any jurisdiction wherein it may be sought to be enforced, or that is otherwise deemed to be invalid and/or unenforceable, shall not operate to invalidate the remaining provisions hereof. The parties hereby waive trial by jury with respect to any action, claim, suit, or proceeding connected herewith. The prevailing party shall be entitled to attorney fees in any action brought under this Agreement.

37. Entire Agreement: This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and there are no other representations, warranties or conditions, express or implied, other than as stated herein. This Agreement may be amended only by a written amendment signed by both parties. It is expressly agreed that this Agreement sets forth the sole and exclusive remedies of Customer in respect of the rental of the Equipment and that Buckner's liabilities are as set out herein. Even where the Purchase Order number of Customer is referenced in this Agreement, or Customer has submitted to Buckner a Purchase Order or terms of purchase or lease, the terms and conditions set out in this Agreement remain the sole and exclusive terms and conditions upon which the Equipment is rented.

38. Counterparts: This Agreement may be executed in any number of counterparts, each of which when executed and delivered (by facsimile or otherwise) shall be deemed to be an original, and all of which together shall constitute one and the same document.

39. IN WITNESS WHEREOF, the parties have read all provisions which are a part of this Agreement and have executed this Agreement on the date first above written.

| | |
|---|---|
| DocuSigned by: Buckner Heavylift Cranes, LLC | S'n'S Erectors Inc. |
| Brian C Miller<br>06ED5A2C87CE4E0... | |
| By: Brian Miller | By: Jason Stout |
| Its: Vice President - Sales | Its: President |
| Date: 9/21/2022 | Date: 9/21/22 |



| Customer Initials | DS Buckner Initials |
|---|---|
| JS | BCM |

# CHANGE ORDER TO OPERATED RENTAL AGREEMENT

This Change Order (the "**Change Order**") to the Operated Rental Equipment Rental Agreement for Equipment HC2226, Liebherr LTR1220 s/n 96600 dated August 17, 2022 (the "**Agreement**") between Buckner Heavylift Cranes, LLC ("**Buckner**") and S'n'S Erectors Inc. ("**Customer**"), is entered into on this 17th day of August 2022 (the "**Effective Date**").

WHEREAS, transportations costs have increased due to a delay in executing the Agreement; and

WHEREAS, Customer has agreed to compensate Buckner for the documented cost of the increase; and

THEREFORE, the Change Order modifies the Agreement as follows:

1. Transportation: The transportation charges set forth in the Agreement are subject to the following changes:

| **Transportation Increase** | |
|---|---|
| | Amount/Terms |
| Mobilization Increase | $ 2,500.00 |

2. Other Terms. Other than expressly modified by this Change Order, the terms of the original Agreement, including any Exhibits, remain in full force and effect and shall continue to govern the relationship between the Parties. Nothing contained in this Change Order shall in any way modify Wanzek's obligations with respect to the Equipment under the Agreement. Wanzek acknowledges that any certificate of insurance applies to this Change Order in the same manner as the Agreement.

**BUCKNER**

DocuSigned by:

Brian C Miller

06ED5A2C87CE4E0...

By: Brian Miller

Its: Vice President - Sales

**CUSTOMER**

By: [signature]

Its: President

BUCKNER HEAVYLIFT CRANES

Job Number:__________

**EQUIPMENT RENTAL AGREEMENT - OPERATED**

THIS AGREEMENT made this day 17th, of August 2022.

BETWEEN BUCKNER:

Buckner Heavylift Cranes, LLC ("**Buckner**")
4732 HWY 54 S
Graham, NC 27253
Phone: 336-376-8888
Contact: Jeff Holmes
Email: jeffh@bucknercompanies.com

AND CUSTOMER

S'n'S Erectors Inc. ("**Customer**")
Burleson, Texas 76017
2351 Co Rd 404, Taylor, TX, 76574
Authorized Contact: Jason Stout
Email: jason@snserectors.com

1. Equipment & Rate: Buckner rents to Customer the equipment identified below, including any additional equipment and accessories identified herein (collectively the "**Equipment**""), at the rates shown below and, on the terms, and conditions contained in this Agreement. In addition, Buckner shall provide Customer with one or more operators ("**Operator**) for the Equipment. Operator shall at all times operate and maintain the Equipment under the exclusive direction of Customer. Customer agrees not to transfer the Equipment or allow anyone else to direct its operation.

| Unit # | Configuration | Make | Model | Serial No. | Value |
|---|---|---|---|---|---|
| HC2229 | Hydro | Liebherr | LTR1220 | 96608 | $1,900,000.00 |

| Minimum Term | Rental Start | Weekly Hours | Payment Terms | Billing Cycle (Days) |
|---|---|---|---|---|
| 3 mo. | ~~December 5, 2022~~ Dec 5th - Jan 5th J.S. | Minimum 50 | Net 30 | 28 |

DS BCM

| | |
|---|---|
| Hourly Rate | $ 305.00 |
| Second Shift | N/A |

| Matting | Description | Rate/Terms |
|---|---|---|
| S'n'S Responsible | N/A | N/A |

| Transportation | |
|---|---|
| | Amount/Terms |
| Mobilization | $ 22,500.00 |
| Demobilization | $ 22,500.00 |
| Delivery Address | 2351 Co Rd 404, Taylor, TX, 76574 |

| Equipment Technicians | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | N/A | N/A |
| Daily Rate | A/D Tech included into transportation cost. Any technician required outside of initial assembly or final disassembly will be invoiced at $1,950.00/day up to 10 hours | |
| Lump Sum | N/A | |
| Per Diem | $125.00 | |

| Operators | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | Included in hourly rate above | Included in hourly rate above |
| Per Diem | $ 125.00 | |
| Weekly minimum hours | 50 | |

DocuSign Envelope ID: 75C61220-7167-4A39-98EA-D55C6E0D08B8

| Special Considerations |
|---|
| |

All prices in USD unless otherwise specified. Per diem is charged seven days per week unless otherwise specified.

2. Ground Conditions. Customer assumes all responsibility and is solely liable for the ground or soil conditions in the area where the Equipment is to be stored, parked, assembled, disassembled, or operated. Customer shall perform or has performed all necessary inspections or testing to determine the nature of the ground or soil and its ability to support the Equipment while in operation or otherwise. Customer shall be responsible for any ground or soil remediation actions required to support the Equipment during the term of this Agreement including, but not limited to matting, load spreaders, and plating.

3. Power Lines. Customer is responsible to protect the Equipment and persons in and around the Equipment from the danger of power lines and shall not expose the Equipment or any persons in or around the Equipment to the dangers associated with power lines.

4. Hoisting of Personnel. Hoisting of personnel is strictly prohibited under this Agreement unless all conditions set forth in OSHA's 29 CFR 1926.1431 Subpart CC (Cranes & Derricks in Construction) and specifically Hoisting of Personnel are met. If the conditions are satisfied, all actions necessary to comply with Subpart CC 1926.1431 and ensure safety are the sole responsibility of Customer.

5. Site Conditions, Transportation and Permits. Customer is responsible for all expenses and liabilities associated with preparing and maintaining the project site for use, support, and storage of the Equipment, including but not limited to traffic control, barricades, signage and roadway permits. Customer shall provide suitable access, egress, clearances, turn radii for the delivery and pick up of the Equipment from the project site. Unless prior arrangements are made in writing with the Buckner, Customer is responsible for all expenses associated with delivery or pickup delays, frost laws, government regulatory delays, special project site handling, and double handling of the Equipment. Customer shall secure all necessary permits, permissions, and clearances required for use of the Equipment on the project site. Any delay caused by securing such permits shall be at the expense of Customer. Unless otherwise stated, Customer shall be responsible for all transportation expenses.

6. Direction of Equipment. Customer shall provide or otherwise select competent and experienced personnel to direct the operation of the Equipment pursuant to OSHA 29 CFR 1926.1400 - 1437 Subpart CC as they may apply and the ASME B30.5-2018 standards including but not limited to "Qualifications and Responsibilities" for Crane Users, Site Supervisors and Lift Directors. Customer shall use the standard crane and derrick signals in accordance with OSHA 1226.1400 Appendix A and or American National Standards Institute and American Standard B30.5–2018 (and as amended) to direct Operator at all times when applicable.

7. Compliance with Laws. Customer shall comply with and conform to all municipal, county, state and Federal laws, ordinances, rules, regulations and the like pertaining to the safe use, maintenance and/or operation of the Equipment.

8. Equipment Deposit. The Equipment deposit (the "**Deposit**") is non-refundable and shall be credited against the last month's rental charges. In the event Customer cancels this Agreement, the Deposit shall not be returned, and Customer shall be responsible for the amounts due under this Agreement. The Deposit shall be refunded only if Buckner fails to make the Equipment available within 15 calendar days of the Rental Date.

9. Rental Period. The rental charges shall commence on the earlier of: (i) the Rental Date or (ii) the delivery of the first main Equipment components to the project site. The rental charges shall end, subject to any minimum rental durations, on the latter of: (i) 15 days after Customer provides written notice to Buckner of its intent to return the Equipment emailed to offrent@bucknerheavylift.com or, (ii) the mobilization out of the last main Equipment components from the project site. Nothing contained in this Section shall, other than expressly set forth herein, act to modify any minimum rental durations or other billing or invoices minimums or terms. Buckner has the right to reject any request to extend the rental term at any time in its sole discretion. In addition to the other rights in this Agreement, Buckner has the right to retrieve the Equipment at any time after the minimum rental duration. If Customer refuses to return the Equipment, this may cause damages to Buckner, and Buckner has the right to charge triple the pro rata monthly rental rate for such time when Customer refuses to allow Buckner to retrieve its Equipment. This Agreement is non-cancelable during the minimum rental duration.

10. Changes to Equipment Configuration. Customer must submit any request to modify the Equipment configuration to Buckner at paperwork@bucknerheavylift.com at least 15 days prior to such requested change. Buckner reserves the right, in its sole discretion, to approve and deny any such request depending on its schedule and availability.

11. Changes to Rental Date. Customer may not move the Rental Date without Buckner's written consent. Customer may not request a change to the Rental Date exceeding seven (7) days and may only request one change. Requests to the Rental



| Customer Initials | Buckner Initials |
|---|---|
| | DS |

Date must be made to paperwork@bucknerheavylift.com., and such request must be made no later than:

| | |
|---|---|
| Days in Advance | 30 |

In the event Customer fails to comply with these requirements, rent shall start in accordance with Paragraph 9.

~~12. Overtime Charges. If Customer operates the Equipment in any month in excess of the allotted Monthly Hours, Customer shall pay the hourly rate set out above for each hour in excess of the Monthly Hours. Equipment hours for purposes of Equipment overtime charges shall be calculated using the Operator hours on the Daily Crane Ticket each day, not including travel time.~~

13. Freight and Mobilization/ Demobilization. Buckner and Customer's respective responsibilities for mobilization and de-mobilization are as set out below:

| | Buckner | Customer |
|---|---|---|
| Permits | X | |
| Freight to Site | X | |
| Freight from Site | X | |
| Crane Build/Tear Down Supervisor, Qualified Signal Person and Crews | | X |
| Crane Build/Tear Down Technician | X | |
| On-Site Move Technician | X | |
| Support Cranes and Equipment | | X |

Unless otherwise set forth herein, Customer is responsible for the costs of all such activities.

14. Equipment Transport During Term. Equipment moves during the rental, other than initial mobilization and final demobilization, shall be arranged for and paid by Customer. This includes, but is not limited to, support cranes, manpower, loading and un-loading of all Equipment and components, transit insurance for the Equipment and transport vehicles. In addition, any such moves shall comply with the following:

14.1 All tear-down and erection shall be arranged and paid for by Customer and must, unless otherwise agreed upon in writing, be conducted with the technical input of a Buckner Technician.

14.2 All equipment, personnel and associated expenses required for the transport of the Equipment between locations are the responsibility of Customer.

15. Technicians and Operators. In the event Buckner supplies a technician or other technical advisor (collectively the "**Technician**") or an Operator during the Term, such shall be provided purely as an accommodation for Customer. During the term of this Agreement, Customer agrees to be solely responsible and liable for: (i) for the actions of the Technician and the Operator in as a leased employee, (ii) the supervision and control over the Technician and Operator, including control over the manner or means of their performance of work, and (iii) any injuries to the Technician or Operator. Customer may require the removal of any Operator or Technician. In the event Customer requests a Technician, Customer shall provide Buckner with at least seventy-two (72) hours' written notice by email to cranetech@bucknerheavylift.com. Daily rates for Technicians are quoted using a ten (10) hour day and additional hours beyond ten (10) shall be billed to Customer at an hourly or a pro rata rate. Technician and Operator hours are charged portal to portal and include travel time. Travel and other expenses shall be billed at cost plus 15%. In the event Buckner provides a Technician to Customer for the erection/teardown of the Equipment, Customer is responsible to provide both the crew and the supervisor for this activity.

16. Warranty. Buckner warrants the Equipment is in good, operating condition when delivered. Unless Customer notifies Buckner in writing within 5 days after Equipment is delivered, Customer accepts the Equipment and acknowledges it is good, safe, serviceable, and fit for Customer's intended use. BUCKNER DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED AS TO THE EQUIPMENT OR OTHERWISE. Customer's sole and exclusive remedy for Buckner's breach of this Agreement, including any breach of warranty or downtime of the Equipment, shall be an abatement of rent for the duration of the breach.

17. Title. Title to the Equipment shall at all times remain with Buckner and Customer shall have no right, title or interest therein or thereto except as expressly provided by this Agreement. Customer shall ensure that neither the Equipment nor any part thereof shall become subject to any actual or threatened lien, charge, encumbrance or claim. Customer shall provide Buckner with immediate notice in the event that the Equipment does become subject to any lien, charge, encumbrance or claim and shall take all necessary measures to have such interest discharged. In the event that Customer fails to comply with the requirements of this clause, Buckner may in its sole discretion take any necessary steps to discharge such interest and Customer shall reimburse all costs



| Customer Initials | Buckner Initials |
|---|---|
| | DS |

and compensate all losses incurred by Buckner.

18. Modification to Equipment. Customer shall not remove, alter, disfigure or cover up any numbering, lettering or insignia displayed upon the Equipment, and shall ensure the Equipment is not subject to careless or needless rough usage, or exposed to any hazardous or corrosive chemicals.

19. Taxes, Charges by Authorities. Buckner shall be responsible for income and property taxes associated with the Equipment provided under this Agreement. Customer shall be responsible for, and pay and discharge when due, all other license fees, assessments, and all taxes including all sales, use, rental, excise goods and services, and other taxes or duties now or hereafter imposed by any local, state or federal government or taxing authority upon the Equipment whether the same are payable by or billed or assessed to Buckner or Customer, together with any penalties or interest in connection therewith. Where the period of such tax or fee commences prior to or extends beyond the Term, the cost shall be pro-rated as between Buckner and Customer accordingly. Buckner shall include sales tax and any other applicable taxes on each invoice unless Customer provides Buckner with a current sales tax exemption form in Customer's name prior to such monthly billing cycle.

20. Limitation of Liability.

20.1 Buckner shall not be liable to Customer for any damage or loss to persons or property or for any consequential or indirect damages, whether or not such loss or damage is caused or contributed to or by the rental, ownership, delivery, operation, use, maintenance, handling, transportation, possession or repossession of the Equipment, or by any defect therein, or by any other cause or reason whatsoever, other than for the gross negligence of Buckner. Other than for Buckner's gross negligence, Customer shall be responsible for all damage to the Equipment during the term of this Agreement. Buckner's total liability to Customer under this Agreement, regardless of cause, shall not exceed 50% of the monthly rental rate.

20.2 In no event shall Buckner be liable or responsible for any delays, work stoppages, loss of use of Equipment, lost time, lost profits, inconvenience, or any indirect, incidental, special, liquidated, punitive, or consequential damages or losses arising therefrom. In the event of any mechanical failure or breakdown of the Equipment for which Buckner is responsible, regardless of cause, Customer's sole and exclusive remedy shall be an abatement of rent for the duration of the failure or breakdown. All limits of Buckner's liability contained in this Agreement or elsewhere shall survive the termination of this Agreement or any renewals thereof.

20.3 Customer shall be responsible for all additional costs arising from incorrect or incomplete information provided by Customer.

21. Indemnity. Each party shall indemnify, defend and hold harmless the other, and its employees against any third-party claims, losses, costs, expenses, penalties, damages, liabilities, actions and suits of every kind and nature (collectively a "Claim"), caused by the indemnifying party's: (a) acts or omissions, including that of project personnel for whom such party is responsible to supervise and control under applicable law or this Agreement; (b) beach of this Agreement, (c) violation of any applicable law. The indemnity obligations include all costs, including legal costs, which may at any time be required to pay or which may be imposed, incurred by or asserted against the indemnified party, its agents and employees whether for personal injuries (including death) and/or property damage suffered by any person. These indemnity obligations hereunder shall be in addition to any other rights available and shall not be limited in any manner by any insurance limits, limits on the amount or type of damages, compensation or benefits payable by or for the indemnifying party under any applicable worker's compensation policy, disability benefits, or other employee benefits statute. The provisions of this Section shall survive termination.

22. Insurance: Buckner and Customer shall at all times maintain: (1) $1,000,000.00 comprehensive general liability coverage per occurrence and an additional $5,000,000.00 umbrella, (2) inland marine property coverage listing the Equipment by name and serial number for its full value; (3) worker's compensation insurance coverage with statutory minimum limits, and (4) automobile liability coverage with $1,000,000.00 per occurrence limits. Certificate of Insurance shall contain an acknowledgement by the Insurance Companies agreeing to give Buckner thirty (30) days prior written notice of cancellation or material alteration or change of coverage provided and to include Buckner Heavy Lift Cranes as an additional insured for the general liability, auto and worker's compensation and as lender loss payee for the inland marine property policy, with waiver of subrogation.

23. Customer Responsibilities: Customer agrees that it is solely responsible for: (i) the Equipment and the Operator and that they are under Customer's exclusive jurisdiction, possession, supervision, and control during the term of the rental, (ii) fuel during the rental, (iii) any damage or loss caused by the Operator or Equipment while it is under Customer's supervision and control, (iv) providing overall project site safety and accurate load weights, (v) all load rigging, hooking, and unhooking, (vi) ongoing rental charges, up to 7 days, in the event of costs or damages caused by acts of god, or severe weather, corrosive (Buckner responsible for costs), or (vii) damaging environmental conditions at the project site.

24. Risk of Loss/Damage. Buckner providing support to Customer, including but not limited to lift plans, a mechanic, or a Technician, is done purely as an accommodation shall in no way alter Customer's responsibilities for damage or loss under this



| Customer Initials | DS Buckner Initials |
|---|---|
| JE | CM |

Agreement. In the event Customer is responsible for damage or loss to the Equipment under this Agreement, rent shall continue until the Equipment is fully repaired and available to Buckner for use.

25. No Reliance on Load Measuring Device or Anemometer. If the Equipment has been fitted with a load measuring device or anemometer, Customer acknowledges and agrees that: (a) Buckner has made no warranties or representations whatsoever with respect to the ability of such a load measuring device to accurately or consistently measure weight or wind speeds; (b) it is the responsibility of Customer to independently determine weights and wind speeds during operation so as to ensure that any load or lift does not exceed the rates determined by such Equipment's capacity chart and that the load measuring device or anemometer shall be used as an operator aid only; and (c) if Customer relies upon any such device, Customer does so at its own risk.

26. Accident/Damage Reporting. Customer shall immediately notify Buckner of any accident involving personal injury and/or property damage (including damage to the Equipment). Customer shall immediately deliver to Buckner any summons, pleading, notice, or paper of any kind involving any claim, suit or proceeding relating to any accident or event involving the Equipment.

27. Events of Default: Any of the following occurrences shall constitute an "Event of Default": (a) failure by Customer to pay any amount that is due to Buckner within 5 days of such payment becoming due; (b) the Equipment becoming subject to any lien, charge, encumbrance or claim; (c) Customer being subject to any proceedings respecting bankruptcy, insolvency, arrangements with creditors, winding up, dissolution, liquidation or appointment of receivers; or (d) Customers' breach of any provision of this Agreement not remedied within 5 days of Buckner giving Customer notice of default. Immediately upon the occurrence or continuation of an Event of Default, Buckner may terminate this Agreement, recover possession of the Equipment and shall be entitled to all amounts due and payable under this Agreement. If applicable, Customer shall also pay to Buckner any expenses incurred by Buckner in connection with or relating to the recovery of the Equipment, including any legal fees paid by Buckner. Buckner may exercise any of the above remedies or steps alternatively or cumulatively and in addition to any other rights or remedies which may be available to Buckner at law or equity. Customer hereby grants Buckner an irrevocable license to enter Customer's premises where the Equipment is located to repossess the Equipment in the event of default or termination of this Agreement for any cause.

28. No Set-Off or Deduction. Customer shall not be entitled to set-off or deduct from any amounts payable under this Agreement any monies which it may claim are owed by Buckner to Customer.

29. Payment. Customer shall pay all charges to Buckner at the rates contained herein and payments shall be made to Buckner at 4732 NC Highway 54 East, Graham, NC 27253. All charges are due and payable in accordance with the Payment Terms above from date of invoice. Buckner shall invoice monthly rental charges in advance. Buckner shall invoice freight charges 30 days prior to the scheduled delivery date and the charges are due and payable prior to commencement of transportation activities or as otherwise specified herein. Disputes to invoices must be raised in writing, with a copy sent to AR@bucknerheavylift.com, with Buckner no later than thirty (30) days from the Invoice date or they are waived.

29.1 Overdue payments. Any overdue payments shall bear service and late charges of 1.5% per month, being 18% per annum, on accounts over 30 days until the account is paid in full. Sums are computed and compounded monthly as per the agreed billing cycle.

29.2 Payment and Assignment of Debt. In the event of invoices remaining unpaid by Customer 30 days after invoice date, Customer, in consideration of the Equipment provided by Buckner herein, hereby assigns and transfers in writing to Buckner, to the extent of all monies owed by Customer to Buckner, absolutely all money and amount presently owed or that may become payable to Customer, including all monies owed, by Buckner of the Site where the Equipment is located or used or any other property on which the Equipment is operated during the term of this Agreement, or by any contractor or sub-contractor to whom Customer is owed monies by. Customer hereby discharges and releases any party making payment under the assignment and transfer from any further claim for monies so paid to Buckner. In the event of any such assignment and transfer, Buckner shall have the right to provide a copy of this written assignment and transfer to such Buckner, contractor or sub-contractor, as the case may be, for ratification of that assignment and transfer by that party. If Buckner elects, any money paid to Buckner, may be applied by Buckner as payment, first to any late charges, interest charges, handling charges, legal fees & disbursements, repair charges or any other charges accruing under the terms of this Agreement, which Buckner may be obliged to advance, make or incur, and then apply such money on the amounts due for the rental.

30. Assignment and Sub-Renting. Customer shall not assign or attempt to assign this Agreement or any of its rights under this Agreement or in or to all or any part of the Equipment without the prior written consent of Buckner, which may be arbitrarily withheld. Buckner may assign its rights hereunder or in or to any of the Equipment.

31. Survival. Neither termination nor expiry of this Agreement shall release or relieve the parties from any of their obligations or liabilities under the Agreement which expressly or by their nature survive the termination or expiry, including



| Customer Initials | Buckner Initials |
| --- | --- |
| | DS |

DocuSign Envelope ID: 75C61220-7167-4A39-98EA-D55C6E0D08B8

obligations and liabilities in respect of indemnification and limitation of liability.

32. Notice. Any notice to be given under this Agreement shall be mailed by prepaid registered post or sent via email to the applicable address in this Agreement. If mailed, the notice shall be deemed to have been given on the fourth business day following that on which the notice was mailed. If sent by facsimile, the notice shall be deemed to have been given on the next business day following that on which the notice was faxed.

33. Legal Fees. In the event of any litigation arising out of the execution of this Agreement or any claimed breach thereof, the prevailing party in such litigation shall be entitled to recover its reasonable lawyers' fees (including on appeal thereof), on a solicitor and own client basis, and reasonable costs of litigation, in addition to any other award or decree granted or given by the court.

34. Invalid Provision. The invalidity or unenforceability of any portion of this Agreement shall not affect the validity or enforceability of the remaining provisions hereof: Should any provision of this Agreement be ruled unenforceable or invalid, the Agreement shall be construed as if such provision did not exist.

35. Binding Effect. This Agreement shall be binding upon and shall ensure to the benefit of the parties hereto and their respective successors or permitted assigns.

36. Governing Law. This Agreement shall be construed under and enforced in accordance with the laws of the State of North Carolina. Customer agrees that exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the United States District Court of the State of North Carolina. Any provision of this Agreement that conflicts with any law in any jurisdiction wherein it may be sought to be enforced, or that is otherwise deemed to be invalid and/or unenforceable, shall not operate to invalidate the remaining provisions hereof. The parties hereby waive trial by jury with respect to any action, claim, suit, or proceeding connected herewith. The prevailing party shall be entitled to attorney fees in any action brought under this Agreement.

37. Entire Agreement: This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and there are no other representations, warranties or conditions, express or implied, other than as stated herein. This Agreement may be amended only by a written amendment signed by both parties. It is expressly agreed that this Agreement sets forth the sole and exclusive remedies of Customer in respect of the rental of the Equipment and that Buckner's liabilities are as set out herein. Even where the Purchase Order number of Customer is referenced in this Agreement, or Customer has submitted to Buckner a Purchase Order or terms of purchase or lease, the terms and conditions set out in this Agreement remain the sole and exclusive terms and conditions upon which the Equipment is rented.

38. Counterparts: This Agreement may be executed in any number of counterparts, each of which when executed and delivered (by facsimile or otherwise) shall be deemed to be an original, and all of which together shall constitute one and the same document.

39. IN WITNESS WHEREOF, the parties have read all provisions which are a part of this Agreement and have executed this Agreement on the date first above written.

| Buckner HeavyLift Cranes, LLC | S'n'S Erectors Inc. |
|---|---|
| DocuSigned by: Brian C Miller (signature) 06ED5A2C87C54E0 | (signature) |
| By: Brian Miller | By: |
| Its: Vice President - Sales | Its: President |
| Date: 9/21/2022 | Date: 9/21/22 |



| Customer Initials | Buckner Initials |
|---|---|
| (initials) | DS BCM |

# CHANGE ORDER TO OPERATED RENTAL AGREEMENT

This Change Order (the "**Change Order**") to the Operated Rental Equipment Rental Agreement for Equipment HC2229, Liebherr LTR1220 s/n 96608 dated August 17, 2022 (the "**Agreement**") between Buckner Heavylift Cranes, LLC ("**Buckner**") and S'n'S Erectors Inc. ("**Customer**"), is entered into on this 17th day of August 2022 (the "**Effective Date**").

WHEREAS, transportations costs have increased due to a delay in executing the Agreement; and

WHEREAS, Customer has agreed to compensate Buckner for the documented cost of the increase; and

THEREFORE, the Change Order modifies the Agreement as follows:

1. Transportation: The transportation charges set forth in the Agreement are subject to the following changes:

| **Transportation Increase** | |
|---|---|
| | Amount/Terms |
| Mobilization Increase | $ 2,500.00 |

2. Other Terms. Other than expressly modified by this Change Order, the terms of the original Agreement, including any Exhibits, remain in full force and effect and shall continue to govern the relationship between the Parties. Nothing contained in this Change Order shall in any way modify Wanzek's obligations with respect to the Equipment under the Agreement. Wanzek acknowledges that any certificate of insurance applies to this Change Order in the same manner as the Agreement.

**BUCKNER**

DocuSigned by: Brian C Miller
06ED5A2C87CE4E0...

By: Brian Miller

Its: Vice President - Sales

**CUSTOMER**

By: [signature]

Its: President

DocuSign Envelope ID: 75C61220-7167-4A39-98EA-D55C6E0D08B8

BUCKNER HEAVYLIFT CRANES

Job Number:__________

## EQUIPMENT RENTAL AGREEMENT - OPERATED

THIS AGREEMENT made this day 17th, of August 2022.

BETWEEN BUCKNER:

Buckner Heavylift Cranes, LLC ("**Buckner**")
4732 HWY 54 S
Graham, NC 27253
Phone: 336-376-8888
Contact: Jeff Holmes
Email: jeffh@bucknercompanies.com

AND CUSTOMER

S'n'S Erectors Inc. ("**Customer**")
Burleson, Texas 76017
2351 Co Rd 404, Taylor, TX, 76574
Authorized Contact: Jason Stout
Email: jason@snserectors.com

1. Equipment & Rate: Buckner rents to Customer the equipment identified below, including any additional equipment and accessories identified herein (collectively the "**Equipment**""), at the rates shown below and, on the terms, and conditions contained in this Agreement. In addition, Buckner shall provide Customer with one or more operators ("**Operator**) for the Equipment. Operator shall at all times operate and maintain the Equipment under the exclusive direction of Customer. Customer agrees not to transfer the Equipment or allow anyone else to direct its operation.

| Unit # | Configuration | Make | Model | Serial No. | Value |
|---|---|---|---|---|---|
| HC2220 | Hydro | Liebherr | LTR1220 | 47598 | $1,900,000.00 |

| Minimum Term | Rental Start | Weekly Hours | Payment Terms | Billing Cycle (Days) |
|---|---|---|---|---|
| 3 mo. | ~~December 5, 2022~~ Dec 5 – Jan 5th J.S. (DS) BCM | Minimum 50 | Net 30 | 28 |

| | |
|---|---|
| Hourly Rate | $ 305.00 |
| Second Shift | N/A |

| Matting | Description | Rate/Terms |
|---|---|---|
| S'n'S Responsible | N/A | N/A |

| Transportation | |
|---|---|
| | Amount/Terms |
| Mobilization | $ 22,500.00 |
| Demobilization | $ 22,500.00 |
| Delivery Address | 2351 Co Rd 404, Taylor, TX, 76574 |

| Equipment Technicians | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | N/A | N/A |
| Daily Rate | A/D Tech included into transportation cost. Any technician required outside of initial assembly or final disassembly will be invoiced at $1,950.00/day up to 10 hours | |
| Lump Sum | N/A | |
| Per Diem | $125.00 | |

| Operators | | |
|---|---|---|
| | Standard Time | Overtime |
| Hourly Rate | Included in hourly rate above | Included in hourly rate above |
| Per Diem | $ 125.00 | |
| Weekly minimum hours | 50 | |

DocuSign Envelope ID: 75C61220-7167-4A39-98EA-D55C6E0D08B8

| Special Considerations |
| --- |
| |

All prices in USD unless otherwise specified. Per diem is charged seven days per week unless otherwise specified.

2. Ground Conditions. Customer assumes all responsibility and is solely liable for the ground or soil conditions in the area where the Equipment is to be stored, parked, assembled, disassembled, or operated. Customer shall perform or has performed all necessary inspections or testing to determine the nature of the ground or soil and its ability to support the Equipment while in operation or otherwise. Customer shall be responsible for any ground or soil remediation actions required to support the Equipment during the term of this Agreement including, but not limited to matting, load spreaders, and plating.

3. Power Lines. Customer is responsible to protect the Equipment and persons in and around the Equipment from the danger of power lines and shall not expose the Equipment or any persons in or around the Equipment to the dangers associated with power lines.

4. Hoisting of Personnel. Hoisting of personnel is strictly prohibited under this Agreement unless all conditions set forth in OSHA's 29 CFR 1926.1431 Subpart CC (Cranes & Derricks in Construction) and specifically Hoisting of Personnel are met. If the conditions are satisfied, all actions necessary to comply with Subpart CC 1926.1431 and ensure safety are the sole responsibility of Customer.

5. Site Conditions, Transportation and Permits. Customer is responsible for all expenses and liabilities associated with preparing and maintaining the project site for use, support, and storage of the Equipment, including but not limited to traffic control, barricades, signage and roadway permits. Customer shall provide suitable access, egress, clearances, turn radii for the delivery and pick up of the Equipment from the project site. Unless prior arrangements are made in writing with the Buckner, Customer is responsible for all expenses associated with delivery or pickup delays, frost laws, government regulatory delays, special project site handling, and double handling of the Equipment. Customer shall secure all necessary permits, permissions, and clearances required for use of the Equipment on the project site. Any delay caused by securing such permits shall be at the expense of Customer. Unless otherwise stated, Customer shall be responsible for all transportation expenses.

6. Direction of Equipment. Customer shall provide or otherwise select competent and experienced personnel to direct the operation of the Equipment pursuant to OSHA 29 CFR 1926.1400 - 1437 Subpart CC as they may apply and the ASME B30.5-2018 standards including but not limited to "Qualifications and Responsibilities" for Crane Users, Site Supervisors and Lift Directors. Customer shall use the standard crane and derrick signals in accordance with OSHA 1226.1400 Appendix A and or American National Standards Institute and American Standard B30.5-2018 (and as amended) to direct Operator at all times when applicable.

7. Compliance with Laws. Customer shall comply with and conform to all municipal, county, state and Federal laws, ordinances, rules, regulations and the like pertaining to the safe use, maintenance and/or operation of the Equipment.

8. Equipment Deposit. The Equipment deposit (the "**Deposit**") is non-refundable and shall be credited against the last month's rental charges. In the event Customer cancels this Agreement, the Deposit shall not be returned, and Customer shall be responsible for the amounts due under this Agreement. The Deposit shall be refunded only if Buckner fails to make the Equipment available within 15 calendar days of the Rental Date.

9. Rental Period. The rental charges shall commence on the earlier of: (i) the Rental Date or (ii) the delivery of the first main Equipment components to the project site. The rental charges shall end, subject to any minimum rental durations, on the latter of: (i) 15 days after Customer provides written notice to Buckner of its intent to return the Equipment emailed to offrent@bucknerheavylift.com or, (ii) the mobilization out of the last main Equipment components from the project site. Nothing contained in this Section shall, other than expressly set forth herein, act to modify any minimum rental durations or other billing or invoices minimums or terms. Buckner has the right to reject any request to extend the rental term at any time in its sole discretion. In addition to the other rights in this Agreement, Buckner has the right to retrieve the Equipment at any time after the minimum rental duration. If Customer refuses to return the Equipment, this may cause damages to Buckner, and Buckner has the right to charge triple the pro rata monthly rental rate for such time when Customer refuses to allow Buckner to retrieve its Equipment. This Agreement is non-cancelable during the minimum rental duration.

10. Changes to Equipment Configuration. Customer must submit any request to modify the Equipment configuration to Buckner at paperwork@bucknerheavylift.com at least 15 days prior to such requested change. Buckner reserves the right, in its sole discretion, to approve and deny any such request depending on its schedule and availability.

11. Changes to Rental Date. Customer may not move the Rental Date without Buckner's written consent. Customer may not request a change to the Rental Date exceeding seven (7) days and may only request one change. Requests to the Rental



| Customer Initials | Buckner Initials |
| --- | --- |
| [signature] | DS [signature] |

DocuSign Envelope ID: 75C61220-7167-4A39-98EA-D55C6E0D08B8

Date must be made to paperwork@bucknerheavylift.com., and such request must be made no later than:

| | |
|---|---|
| Days in Advance | 30 |

In the event Customer fails to comply with these requirements, rent shall start in accordance with Paragraph 9.

~~12. Overtime Charges. If Customer operates the Equipment in any month in excess of the allotted Monthly Hours, Customer shall pay the hourly rate set out above for each hour in excess of the Monthly Hours. Equipment hours for purposes of Equipment overtime charges shall be calculated using the Operator hours on the Daily Crane Ticket each day, not including travel time.~~

13. Freight and Mobilization/ Demobilization. Buckner and Customer's respective responsibilities for mobilization and de-mobilization are as set out below:

| | Buckner | Customer |
|---|---|---|
| Permits | X | |
| Freight to Site | X | |
| Freight from Site | X | |
| Crane Build/Tear Down Supervisor, Qualified Signal Person and Crews | | X |
| Crane Build/Tear Down Technician | X | |
| On-Site Move Technician | X | |
| Support Cranes and Equipment | | X |

Unless otherwise set forth herein, Customer is responsible for the costs of all such activities.

14. Equipment Transport During Term. Equipment moves during the rental, other than initial mobilization and final demobilization, shall be arranged for and paid by Customer. This includes, but is not limited to, support cranes, manpower, loading and un-loading of all Equipment and components, transit insurance for the Equipment and transport vehicles. In addition, any such moves shall comply with the following:

14.1 All tear-down and erection shall be arranged and paid for by Customer and must, unless otherwise agreed upon in writing, be conducted with the technical input of a Buckner Technician.

14.2 All equipment, personnel and associated expenses required for the transport of the Equipment between locations are the responsibility of Customer.

15. Technicians and Operators. In the event Buckner supplies a technician or other technical advisor (collectively the "**Technician**") or an Operator during the Term, such shall be provided purely as an accommodation for Customer. During the term of this Agreement, Customer agrees to be solely responsible and liable for: (i) for the actions of the Technician and the Operator in as a leased employee, (ii) the supervision and control over the Technician and Operator, including control over the manner or means of their performance of work, and (iii) any injuries to the Technician or Operator. Customer may require the removal of any Operator or Technician. In the event Customer requests a Technician, Customer shall provide Buckner with at least seventy-two (72) hours' written notice by email to cranetech@bucknerheavylift.com. Daily rates for Technicians are quoted using a ten (10) hour day and additional hours beyond ten (10) shall be billed to Customer at an hourly or a pro rata rate. Technician and Operator hours are charged portal to portal and include travel time. Travel and other expenses shall be billed at cost plus 15%. In the event Buckner provides a Technician to Customer for the erection/teardown of the Equipment, Customer is responsible to provide both the crew and the supervisor for this activity.

16. Warranty. Buckner warrants the Equipment is in good, operating condition when delivered. Unless Customer notifies Buckner in writing within 5 days after Equipment is delivered, Customer accepts the Equipment and acknowledges it is good, safe, serviceable, and fit for Customer's intended use. BUCKNER DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED AS TO THE EQUIPMENT OR OTHERWISE. Customer's sole and exclusive remedy for Buckner's breach of this Agreement, including any breach of warranty or downtime of the Equipment, shall be an abatement of rent for the duration of the breach.

17. Title. Title to the Equipment shall at all times remain with Buckner and Customer shall have no right, title or interest therein or thereto except as expressly provided by this Agreement. Customer shall ensure that neither the Equipment nor any part thereof shall become subject to any actual or threatened lien, charge, encumbrance or claim. Customer shall provide Buckner with immediate notice in the event that the Equipment does become subject to any lien, charge, encumbrance or claim and shall take all necessary measures to have such interest discharged. In the event that Customer fails to comply with the requirements of this clause, Buckner may in its sole discretion take any necessary steps to discharge such interest and Customer shall reimburse all costs



| Customer Initials | Buckner Initials |
|---|---|
| | DS |

and compensate all losses incurred by Buckner.

18. Modification to Equipment. Customer shall not remove, alter, disfigure or cover up any numbering, lettering or insignia displayed upon the Equipment, and shall ensure the Equipment is not subject to careless or needless rough usage, or exposed to any hazardous or corrosive chemicals.

19. Taxes, Charges by Authorities. Buckner shall be responsible for income and property taxes associated with the Equipment provided under this Agreement. Customer shall be responsible for, and pay and discharge when due, all other license fees, assessments, and all taxes including all sales, use, rental, excise goods and services, and other taxes or duties now or hereafter imposed by any local, state or federal government or taxing authority upon the Equipment whether the same are payable by or billed or assessed to Buckner or Customer, together with any penalties or interest in connection therewith. Where the period of such tax or fee commences prior to or extends beyond the Term, the cost shall be pro-rated as between Buckner and Customer accordingly. Buckner shall include sales tax and any other applicable taxes on each invoice unless Customer provides Buckner with a current sales tax exemption form in Customer's name prior to such monthly billing cycle.

20. Limitation of Liability.

20.1 Buckner shall not be liable to Customer for any damage or loss to persons or property or for any consequential or indirect damages, whether or not such loss or damage is caused or contributed to or by the rental, ownership, delivery, operation, use, maintenance, handling, transportation, possession or repossession of the Equipment, or by any defect therein, or by any other cause or reason whatsoever, other than for the gross negligence of Buckner. Other than for Buckner's gross negligence, Customer shall be responsible for all damage to the Equipment during the term of this Agreement. Buckner's total liability to Customer under this Agreement, regardless of cause, shall not exceed 50% of the monthly rental rate.

20.2 In no event shall Buckner be liable or responsible for any delays, work stoppages, loss of use of Equipment, lost time, lost profits, inconvenience, or any indirect, incidental, special, liquidated, punitive, or consequential damages or losses arising therefrom. In the event of any mechanical failure or breakdown of the Equipment for which Buckner is responsible, regardless of cause, Customer's sole and exclusive remedy shall be an abatement of rent for the duration of the failure or breakdown. All limits of Buckner's liability contained in this Agreement or elsewhere shall survive the termination of this Agreement or any renewals thereof.

20.3 Customer shall be responsible for all additional costs arising from incorrect or incomplete information provided by Customer.

21. Indemnity. Each party shall indemnify, defend and hold harmless the other, and its employees against any third-party claims, losses, costs, expenses, penalties, damages, liabilities, actions and suits of every kind and nature (collectively a "Claim"), caused by the indemnifying party's: (a) acts or omissions, including that of project personnel for whom such party is responsible to supervise and control under applicable law or this Agreement; (b) beach of this Agreement, (c) violation of any applicable law. The indemnity obligations include all costs, including legal costs, which may at any time be required to pay or which may be imposed, incurred by or asserted against the indemnified party, its agents and employees whether for personal injuries (including death) and/or property damage suffered by any person. These indemnity obligations hereunder shall be in addition to any other rights available and shall not be limited in any manner by any insurance limits, limits on the amount or type of damages, compensation or benefits payable by or for the indemnifying party under any applicable worker's compensation policy, disability benefits, or other employee benefits statute. The provisions of this Section shall survive termination.

22. Insurance: Buckner and Customer shall at all times maintain: (1) $1,000,000.00 comprehensive general liability coverage per occurrence and an additional $5,000,000.00 umbrella, (2) inland marine property coverage listing the Equipment by name and serial number for its full value; (3) worker's compensation insurance coverage with statutory minimum limits, and (4) automobile liability coverage with $1,000,000.00 per occurrence limits. Certificate of Insurance shall contain an acknowledgement by the Insurance Companies agreeing to give Buckner thirty (30) days prior written notice of cancellation or material alteration or change of coverage provided and to include Buckner Heavy Lift Cranes as an additional insured for the general liability, auto and worker's compensation and as lender loss payee for the inland marine property policy, with waiver of subrogation.

23. Customer Responsibilities: Customer agrees that it is solely responsible for: (i) the Equipment and the Operator and that they are under Customer's exclusive jurisdiction, possession, supervision, and control during the term of the rental, (ii) fuel during the rental, (iii) any damage or loss caused by the Operator or Equipment while it is under Customer's supervision and control, (iv) providing overall project site safety and accurate load weights, (v) all load rigging, hooking, and unhooking, (vi) ongoing rental charges, up to 7 days, in the event of costs or damages caused by acts of god, or severe weather, corrosive (Buckner responsible for costs), or (vii) damaging environmental conditions at the project site.

24. Risk of Loss/Damage. Buckner providing support to Customer, including but not limited to lift plans, a mechanic, or a Technician, is done purely as an accommodation shall in no way alter Customer's responsibilities for damage or loss under this



| Customer Initials | Buckner Initials |
|---|---|
| | |

Agreement. In the event Customer is responsible for damage or loss to the Equipment under this Agreement, rent shall continue until the Equipment is fully repaired and available to Buckner for use.

25. No Reliance on Load Measuring Device or Anemometer. If the Equipment has been fitted with a load measuring device or anemometer, Customer acknowledges and agrees that: (a) Buckner has made no warranties or representations whatsoever with respect to the ability of such a load measuring device to accurately or consistently measure weight or wind speeds; (b) it is the responsibility of Customer to independently determine weights and wind speeds during operation so as to ensure that any load or lift does not exceed the rates determined by such Equipment's capacity chart and that the load measuring device or anemometer shall be used as an operator aid only; and (c) if Customer relies upon any such device, Customer does so at its own risk.

26. Accident/Damage Reporting. Customer shall immediately notify Buckner of any accident involving personal injury and/or property damage (including damage to the Equipment). Customer shall immediately deliver to Buckner any summons, pleading, notice, or paper of any kind involving any claim, suit or proceeding relating to any accident or event involving the Equipment.

27. Events of Default: Any of the following occurrences shall constitute an "Event of Default": (a) failure by Customer to pay any amount that is due to Buckner within 5 days of such payment becoming due; (b) the Equipment becoming subject to any lien, charge, encumbrance or claim; (c) Customer being subject to any proceedings respecting bankruptcy, insolvency, arrangements with creditors, winding up, dissolution, liquidation or appointment of receivers; or (d) Customers' breach of any provision of this Agreement not remedied within 5 days of Buckner giving Customer notice of default. Immediately upon the occurrence or continuation of an Event of Default, Buckner may terminate this Agreement, recover possession of the Equipment and shall be entitled to all amounts due and payable under this Agreement. If applicable, Customer shall also pay to Buckner any expenses incurred by Buckner in connection with or relating to the recovery of the Equipment, including any legal fees paid by Buckner. Buckner may exercise any of the above remedies or steps alternatively or cumulatively and in addition to any other rights or remedies which may be available to Buckner at law or equity. Customer hereby grants Buckner an irrevocable license to enter Customer's premises where the Equipment is located to repossess the Equipment in the event of default or termination of this Agreement for any cause.

28. No Set-Off or Deduction. Customer shall not be entitled to set-off or deduct from any amounts payable under this Agreement any monies which it may claim are owed by Buckner to Customer.

29. Payment. Customer shall pay all charges to Buckner at the rates contained herein and payments shall be made to Buckner at 4732 NC Highway 54 East, Graham, NC 27253. All charges are due and payable in accordance with the Payment Terms above from date of invoice. Buckner shall invoice monthly rental charges in advance. Buckner shall invoice freight charges 30 days prior to the scheduled delivery date and the charges are due and payable prior to commencement of transportation activities or as otherwise specified herein. Disputes to invoices must be raised in writing, with a copy sent to AR@bucknerheavylift.com, with Buckner no later than thirty (30) days from the Invoice date or they are waived.

29.1 Overdue payments. Any overdue payments shall bear service and late charges of 1.5% per month, being 18% per annum, on accounts over 30 days until the account is paid in full. Sums are computed and compounded monthly as per the agreed billing cycle.

29.2 Payment and Assignment of Debt. In the event of invoices remaining unpaid by Customer 30 days after invoice date, Customer, in consideration of the Equipment provided by Buckner herein, hereby assigns and transfers in writing to Buckner, to the extent of all monies owed by Customer to Buckner, absolutely all money and amount presently owed or that may become payable to Customer, including all monies owed, by Buckner of the Site where the Equipment is located or used or any other property on which the Equipment is operated during the term of this Agreement, or by any contractor or sub-contractor to whom Customer is owed monies by. Customer hereby discharges and releases any party making payment under the assignment and transfer from any further claim for monies so paid to Buckner. In the event of any such assignment and transfer, Buckner shall have the right to provide a copy of this written assignment and transfer to such Buckner, contractor or sub-contractor, as the case may be, for ratification of that assignment and transfer by that party. If Buckner elects, any money paid to Buckner, may be applied by Buckner as payment, first to any late charges, interest charges, handling charges, legal fees & disbursements, repair charges or any other charges accruing under the terms of this Agreement, which Buckner may be obliged to advance, make or incur, and then apply such money on the amounts due for the rental.

30. Assignment and Sub-Renting. Customer shall not assign or attempt to assign this Agreement or any of its rights under this Agreement or in or to all or any part of the Equipment without the prior written consent of Buckner, which may be arbitrarily withheld. Buckner may assign its rights hereunder or in or to any of the Equipment.

31. Survival. Neither termination nor expiry of this Agreement shall release or relieve the parties from any of their obligations or liabilities under the Agreement which expressly or by their nature survive the termination or expiry, including



| Customer Initials | Buckner Initials |
| --- | --- |
| | DS |

DocuSign Envelope ID: 75C61220-7167-4A39-98EA-D55C6E0D08B8

obligations and liabilities in respect of indemnification and limitation of liability.

32. Notice. Any notice to be given under this Agreement shall be mailed by prepaid registered post or sent via email to the applicable address in this Agreement. If mailed. the notice shall be deemed to have been given on the fourth business day following that on which the notice was mailed. If sent by facsimile. the notice shall be deemed to have been given on the next business day following that on which the notice was faxed.

33. Legal Fees. In the event of any litigation arising out of the execution of this Agreement or any claimed breach thereof. the prevailing party in such litigation shall be entitled to recover its reasonable lawyers' fees (including on appeal thereof). on a solicitor and own client basis. and reasonable costs of litigation. in addition to any other award or decree granted or given by the court.

34. Invalid Provision. The invalidity or unenforceability of any portion of this Agreement shall not affect the validity or enforceability of the remaining provisions hereof: Should any provision of this Agreement be ruled unenforceable or invalid. the Agreement shall be construed as if such provision did not exist.

35. Binding Effect. This Agreement shall be binding upon and shall ensure to the benefit of the parties hereto and their respective successors or permitted assigns.

36. Governing Law. This Agreement shall be construed under and enforced in accordance with the laws of the State of North Carolina. Customer agrees that exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the United States District Court of the State of North Carolina. Any provision of this Agreement that conflicts with any law in any jurisdiction wherein it may be sought to be enforced. or that is otherwise deemed to be invalid and/or unenforceable. shall not operate to invalidate the remaining provisions hereof. The parties hereby waive trial by jury with respect to any action. claim. suit. or proceeding connected herewith. The prevailing party shall be entitled to attorney fees in any action brought under this Agreement.

37. Entire Agreement: This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. and there are no other representations. warranties or conditions. express or implied. other than as stated herein. This Agreement may be amended only by a written amendment signed by both parties. It is expressly agreed that this Agreement sets forth the sole and exclusive remedies of Customer in respect of the rental of the Equipment and that Buckner's liabilities are as set out herein. Even where the Purchase Order number of Customer is referenced in this Agreement. or Customer has submitted to Buckner a Purchase Order or terms of purchase or lease. the terms and conditions set out in this Agreement remain the sole and exclusive terms and conditions upon which the Equipment is rented.

38. Counterparts: This Agreement may be executed in any number of counterparts, each of which when executed and delivered (by facsimile or otherwise) shall be deemed to be an original. and all of which together shall constitute one and the same document.

39. IN WITNESS WHEREOF. the parties have read all provisions which are a part of this Agreement and have executed this Agreement on the date first above written.

| | |
|---|---|
| DocuSigned by: | |
| **Buckner Heavylift Cranes, LLC** | **S'n'S Erectors Inc.** |
| Brian C Miller | [signature] |
| 06ED5A2C87CE4E0... | |
| By: Brian Miller | By: |
| Its: Vice President - Sales | Its: President |
| Date: 9/21/2022 | Date: 9/21/22 |



| Customer Initials | DS Buckner Initials |
|---|---|
| [initials] | BCM |

# CHANGE ORDER TO OPERATED RENTAL AGREEMENT

This Change Order (the "**Change Order**") to the Operated Rental Equipment Rental Agreement for Equipment HC2220, Liebherr LTR1220 s/n 47598 dated August 17, 2022 (the "**Agreement**") between Buckner Heavylift Cranes, LLC ("**Buckner**") and S'n'S Erectors Inc. ("**Customer**"), is entered into on this 17th day of August 2022 (the "**Effective Date**").

WHEREAS, transportations costs have increased due to a delay in executing the Agreement; and

WHEREAS, Customer has agreed to compensate Buckner for the documented cost of the increase; and

THEREFORE, the Change Order modifies the Agreement as follows:

1. Transportation: The transportation charges set forth in the Agreement are subject to the following changes:

| **Transportation Increase** | |
|---|---|
| | Amount/Terms |
| Mobilization Increase | $ 2,500.00 |

2. Other Terms. Other than expressly modified by this Change Order, the terms of the original Agreement, including any Exhibits, remain in full force and effect and shall continue to govern the relationship between the Parties. Nothing contained in this Change Order shall in any way modify Wanzek's obligations with respect to the Equipment under the Agreement. Wanzek acknowledges that any certificate of insurance applies to this Change Order in the same manner as the Agreement.

**BUCKNER**

DocuSigned by:
Brian C Miller
06ED5A2C87CE4E0...

By: Brian Miller

Its: Vice President - Sales

**CUSTOMER**

By: [signature]

Its: President